**Dejuan HILL, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

No. 48A02–1103–CR–179.

Court of Appeals of Indiana.

Oct. 25, 2011.

Michael Frischkorn, Frischkorn Law Office, Fortville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ann L. Goodwin, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Dejuan Hill appeals his conviction for unlawful possession of a firearm by a serious violent felon, a Class B felony, following a jury trial. Hill presents a single dispositive issue for our review, namely, whether the trial court abused its discretion when it admitted evidence obtained by police following a *Terry* stop and pat-down search of his person.

We reverse.

### FACTS AND PROCEDURAL HISTORY

On April 9, 2009, at approximately 10:30 p.m., officers with the Anderson Police Department initiated a traffic stop, and an occupant of the stopped vehicle fled the scene on foot. Officer Keith Gaskill was in his patrol car nearby and heard a radio dispatch stating that a "light-skinned" black male had fled on foot from the traffic

stop. Transcript[1] at 7. The dispatch also provided information that led Officer Gaskill "to the area of [the] 1600 block of Madison Avenue." *Id.* Officer Gaskill was driving slowly down an alley in that area when he saw a light-skinned black male pedestrian moving at a pace that "seemed quick[,] like he was leaving somewhere quickly." *Id.* at 8. "[G]iven the distance and the direction of the traffic stop" from Officer Gaskill's location, he surmised that the man might be the suspect police were seeking. *Id.* at 34.

Officer Gaskill stopped his patrol car, exited the car, and approached the man, later identified as Hill. Officer Gaskill told Hill to stop and to walk towards him. Hill reached into his pants' pocket, but complied when Officer Gaskill instructed him to take his hand out of the pocket. Officer Gaskill "felt" like Hill was preparing to flee. *Id.* at 9. Officer Gaskill described Hill's actions as follows:

> He was looking around. I've seen a lot of people flee from me and other officers. He was looking around rapidly, continued to back away, and stuck his hand down in his pocket. I asked him to remove that, [and Hill was doing] what I would call cocking his body and looking around for an avenue. I don't know if that explains it if you can visualize that but that's what I'm familiar with when people are looking for a way to get away from my presence.

*Id.* at 9–10. Hill did not flee, and Officer Gaskill began asking him questions about his movements that evening. Hill initially stated that he lived at 2315 Sherman Street and that he was on his way home. But Hill had not been traveling in that direction when Officer Gaskill had first stopped him. Hill then "changed his story" and stated that he had left his home and was on his way to his girlfriend's house. *Id.* at 11. But Officer Gaskill determined that that explanation did not make sense either given his direction of travel.

Officer Gaskill became suspicious of Hill given that he was a light-skinned black male, who matched the description of the suspect; he was in a location consistent with where the suspect might be given information about the traffic stop and an address found on a pill bottle[2] in the stopped car; and he gave inconsistent and nonsensical statements about his movements that evening. Other officers arrived to assist Officer Gaskill, and Officer Gaskill still believed that Hill might flee.

Officer Gaskill conducted a pat-down search of Hill's person, ostensibly for officer safety, which revealed a baggie containing a small amount of marijuana in Hill's pants pocket. Officer Gaskill then arrested Hill and performed a second search incident to arrest. No additional contraband was discovered.

Officer Gaskill transported Hill, who was in handcuffs, to the Muncie County Jail in the back of his patrol car.[3] En route, Officer Gaskill observed Hill making movements with his body that suggested to Officer Gaskill that Hill was removing contraband from his person. Once they arrived at the jail and Hill exited the car,

---

1. Our references to the transcript refer to the transcript of the suppression hearing, not the trial.

2. Officer Gaskill surmised that the suspect lived at the address found on the pill bottle and that he might be going home after leaving the scene of the traffic stop.

3. En route to the police station, Officer Gaskill learned that the suspect from the traffic stop had been apprehended by other officers. Accordingly, Officer Gaskill planned to process Hill for marijuana possession at the jail.

Officer Gaskill searched the back seat and found a small gun under the seat.

The State charged Hill with unlawful possession of a firearm by a serious violent felon, a Class B felony; receiving stolen property,[4] as a Class D felony; and possession of marijuana, as a Class A misdemeanor. Hill filed a motion to suppress alleging that the evidence against him was obtained in violation of the Fourth Amendment and Article I, Section 11 of the Indiana Constitution. Following a hearing, the trial court denied that motion. The State dismissed the receiving stolen property and marijuana possession charges prior to trial. And a jury found Hill guilty of unlawful possession of a firearm by a serious violent felon. The trial court entered judgment and sentence accordingly. This appeal ensued.

## DISCUSSION AND DECISION

■ Hill contends in relevant part that the trial court abused its discretion when it admitted into evidence the gun found in Officer Gaskill's patrol car. Our standard of review of a trial court's findings as to the admissibility of evidence is an abuse of discretion. *Roush v. State*, 875 N.E.2d 801, 808 (Ind.Ct.App.2007). An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

Hill maintains that the officer's pat-down search was unconstitutional and, as a result, that the ensuing discovery of the gun was fruit of the poisonous tree. Hill's argument requires that we first determine whether the officer's pat-down search was supported by an objectively reasonable fear for the officer's safety.[5] In *Terry v.*

*Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court balanced the "neutralization of danger to the policeman in the investigative circumstances and the sanctity of the individual," and it concluded that there is

> narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, *due weight must be given, not to his inchoate and unparticularized suspicion or "hunch,"* but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

(Emphasis added).

■ In short, a pat-down search is reasonable if the facts are such that a reasonably prudent person in the same circumstances would be warranted in believing that the officer was in danger. *Banks v. State*, 681 N.E.2d 235, 237 (Ind. Ct.App.1997). And in determining whether the officer acted reasonably under the circumstances, we consider the specific, reasonable inferences that the officer is entitled to draw from the facts in light of his experience. *Id.* at 237–38.

■ Here, we agree with Hill that the evidence does not support a determination

---

4. The gun Officer Gaskill found in the back seat of his patrol car did not belong to Hill and had been reported stolen.

5. We assume, but need not decide for purposes of this appeal, that Officer Gaskill had reasonable suspicion to conduct a *Terry* stop of Hill in the first place.

that Officer Gaskill held a reasonable belief that Hill was armed and dangerous at the time of the pat-down search. First, none of the information relating to the suspect who fled from the traffic stop indicated that he was armed or dangerous. Second, while Officer Gaskill testified that he "do[esn't] like" it when a suspect puts his hand in his pocket, like Hill did, Hill complied when Officer Gaskill told him to remove his hand from the pocket. Transcript at 11. And when asked whether he had "some concern about whether [Hill] would have a weapon" in his pocket, Officer Gaskill replied only that he is generally "concerned about people with weapons." *Id.*

Finally, Officer Gaskill testified on redirect examination that his "motive" for the pat-down search was his "own safety" given the one instance of the hand in the pocket and the fact that Hill was "looking around and cocking his body, et[ ]cetera." *Id.* at 40. But, again, Hill put his hand in his pocket one time and complied when Officer Gaskill instructed him to remove it. And, as for the "looking around and cocking his body," Officer Gaskill had described those actions as indicative of Hill's apparent desire to flee. *Id.* In fact, while Officer Gaskill seemed very concerned that Hill looked like he was going to flee, he did not testify to facts that would support a reasonable, objective belief that Hill was armed and dangerous. Officer Gaskill made no connection between the likelihood that Hill would flee with any likelihood that he would be armed and dangerous.

In support of its contention that Officer Gaskill performed the pat-down search because of concern for his safety, the State cites a single case, namely, *Williams v. State*, 754 N.E.2d 584 (Ind.Ct.App.2001). But the facts of this case are distinguishable from those in *Williams*. In particular, in *Williams*, the suspect "avoided eye contact with the officer, was more nervous than usual for a routine traffic stop, was sweating, and his legs were shaking. [Further,] [i]n spite of repeatedly being told to remove his hands from his pocket and waistband area, Williams kept putting his hands in his pockets." *Id.* at 588. The officer testified that that conduct "caused [him] to fear for his safety." *Id.* at 586. We held that Williams' behavior warranted the officer's reasonable fear for his safety and the subsequent pat-down search. *Id.* at 588.

Here, again, Hill complied with Officer Gaskill's request that he take his hand out of his pocket. And Officer Gaskill's other observations of Hill related to his suspicion that Hill was about to flee without stating any specific facts related to a fear for his safety. This case is analogous to *Jett v. State*, 716 N.E.2d 69 (Ind.Ct.App.1999). In *Jett*, an officer conducted a traffic stop, and the driver "immediately exited his vehicle." *Id.* at 70. The officer testified that, "generally, [that conduct by a driver] can be seen as a sign of hostility. . . . That individual can get out of the car and rush an officer sitting in his car and we are trained for that at the firearms range." *Id.* But the driver complied when the officer ordered him to return to his car. Thereafter, the driver "made no furtive or threatening movements and remained inside his vehicle until the officer ordered him out in order to perform the pat[-]down search." *Id.* at 71. The officer testified that "there was nothing indicating that [Jett] was armed, it just . . . [sic] for officer's safety[;] anyone and everyone can be armed." *Id.*

We held that "[t]his type of generalized suspicion does not authorize a pat-down search." *Id.* And we concluded that a reasonable person in the officer's circumstances would not have reasonable suspicion to believe that Jett was armed and dangerous. *Id.* Accordingly, we held that

the pat-down search of Jett was unreasonable and that the trial court should have suppressed the marijuana found on Jett's person as a result of that search. *Id.*

Likewise, here, Hill complied with Officer Gaskill's request that he remove his hand from his pocket. And Officer Gaskill testified that he is "concerned about people with weapons[,]" which is a general concern not specific to Hill. Transcript at 11. While Officer Gaskill testified that his motive for the pat-down search was his "own safety," he testified that the reason for his concern was the single incidence of Hill's hand in his pocket and Hill's conduct that indicated he might flee. *Id.* at 40. Again, the Fourth Amendment requires that the officer have a particularized suspicion, or more than a "hunch," that a person is armed and dangerous before conducting a pat-down search for weapons. *See Terry,* 392 U.S. at 27, 88 S.Ct. 1868. We hold that the evidence does not support a determination that Officer Gaskill had a reasonable belief that Hill was armed and dangerous, and the pat-down search was an illegal search under the Fourth Amendment.

Next, Hill contends that the evidence police obtained as a result of the pat-down search should have been excluded as fruit of the poisonous tree. As we stated in *Hanna v. State,* 726 N.E.2d 384, 389 (Ind.Ct.App.2000):

> The "fruit of the poisonous tree" doctrine is one facet of the exclusionary rule of evidence which bars the admissibility in a criminal proceeding of evidence obtained in the course of unlawful searches and seizures. When applied, the doctrine operates to bar not only evidence directly obtained, but also evidence derivatively gained as a result of information learned or leads obtained during an unlawful search or seizure. To invoke

the doctrine, a defendant must show that challenged evidence was obtained by the State in violation of the defendant's Fourth Amendment rights. Stated differently, the defendant must show that the search or seizure was illegal in the first instance. Where there is no illegal search or seizure, there can be no "fruit of the poisonous tree."

> However, the "fruit of the poisonous tree" doctrine has no application when the derivative evidence has an "independent source," when the "connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint,'" and when the challenged evidence would inevitably have been properly obtained.

(Citations omitted).

Here, the State makes no argument that the evidence is not fruit of the poisonous tree. Indeed, there is no evidence in the record to show that any of the exceptions to the doctrine apply here. The gun found in the back seat of Officer Gaskill's patrol car did not have an "independent source," and the connection between the illegal search and the discovery of the gun was not attenuated. *See id.* Nor does the record show that the evidence would have been "inevitably" obtained in this case. *See id.* We hold that the trial court abused its discretion when it admitted the gun into evidence.[6] Without that evidence, there is insufficient evidence to support Hill's conviction, and, therefore, we reverse his conviction.

Reversed.

RILEY, J., and MAY, J., concur.

---

6. Again, the State dismissed the marijuana possession charge prior to trial.