

**FILED**

Apr 15 2015, 9:15 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Matthew D. Anglemeyer
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

A.A.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner*

April 15, 2015

Court of Appeals Case No.
49A05-1408-JV-371

Appeal from the Marion Superior
Court

The Honorable Marilyn A. Moores,
Judge

The Honorable Geoffrey Gaither,
Magistrate

Case No. 49D09-1405-JD-1354

**Crone, Judge**

## Case Summary

[1] A.A., a juvenile, appeals a true finding that he committed dangerous possession of a firearm, a class A misdemeanor if committed by an adult. He challenges

the trial court's decision to admit the firearm during the factfinding hearing, claiming that it was the product of an unconstitutional patdown during an investigatory traffic stop. Finding that the patdown was lawful under both the United States and Indiana Constitutions, we conclude that the trial court acted within its discretion in admitting the firearm. As such, we affirm the true finding.

## Facts and Procedural History

[2] Just before midnight on May 28, 2014, Indianapolis Metropolitan Police Department officers conducted a traffic stop at 38th Street and Georgetown Road. During the stop, the officers heard gunshots and sent a radio report of gunfire near the 3500 block of Donald Street. Officer Daniel Slightom was patrolling nearby and responded to the dispatch by driving his marked police cruiser through the area. He observed a vehicle with three occupants, which passed by his cruiser slowly. He noticed that the vehicle had an improperly displayed temporary license plate. He turned to follow the vehicle and saw it roll through a stop sign and turn left. The driver pulled the vehicle off the road and stopped near 37th and Donald Streets before the officer activated his patrol lights.

[3] Officer Slightom stopped his cruiser and approached the vehicle. He asked the driver for his license and registration and whether he lived at the adjacent residence. He informed the driver that he was investigating a report of gunfire and asked him whether any weapons were inside the vehicle. In a "fluttered,"

"shaky" voice, the driver said "no" without looking at the officer. Tr. at 12. Neither the driver nor A.A., the front-seat passenger, could provide any identification. The record is silent concerning identification of the backseat passenger. The verbal information provided by A.A. could not be confirmed by the officer's computer search.[1]

[4] Officer Michael Faulk arrived on the scene as backup. The officers ordered the driver out of the vehicle, and an ensuing patdown produced no firearms. Officer Slightom had A.A. step out of the vehicle and turn for a patdown. The officer described the patdown as follows: "I immediately, I used my right hand, went basically where the waistband. As soon as I placed my hand on his waistband, I immediately felt the butt end of a gun." *Id*. at 26. Officer Slightom "detected a flinch" by A.A. and said "gun." *Id*. at 27. Officer Faulk then assisted in detaining A.A., who said he had a permit for the handgun.[2]

[5] On May 30, 2014, the State filed a petition alleging that sixteen-year-old A.A. was a delinquent child for an act that would be class A misdemeanor carrying a handgun without a license if committed by an adult. At the June 27, 2014 denial hearing on the petition, A.A. moved to suppress the admission of the

---

[1] Officer Slightom testified that he found similar names in his computer search, but they all had different birthdates than the one provided by A.A. Tr. at 13.

[2] Indiana law requires that a person be at least eighteen years of age to obtain a permit to carry a firearm.

firearm on constitutional grounds. The court denied the motion to suppress, entered a true finding, and placed A.A. on probation. A.A. now appeals.

# Discussion and Decision

[6] Because A.A. appeals the denial of his motion to suppress following a factfinding hearing, rather than as an interlocutory appeal, we treat the issue as a challenge to the trial court's admission of evidence at the factfinding hearing. *J.K. v. State*, 8 N.E.3d 222, 228 (Ind. 2014). We review a trial court's decision to admit or exclude evidence using an abuse of discretion standard. *Id*. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or where the trial court misinterprets the law. *Id*. In conducting such review, we do not reweigh evidence; we construe conflicting evidence in the light most favorable to the ruling, but we will also consider any substantial and uncontested evidence favorable to the defendant. *Robinson v. State*, 5 N.E.3d 362, 365 (Ind. 2014). However, where the issue concerns the constitutionality of a search or seizure, it presents a question of law, which we review de novo. *Id*. Similarly, we review determinations of reasonable suspicion and probable cause using a de novo standard. *J.K.*, 8 N.E.3d at 228.

# Section 1 – The officer did not violate A.A.'s Fourth Amendment rights.

[7] A.A. characterizes Officer Slightom's patdown as an unconstitutional search under the Fourth Amendment to the United States Constitution, which

guarantees "[t]he right of the people to be secure in their persons … against unreasonable searches and seizures." The Fourth Amendment's safeguards "extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *L.W. v. State*, 926 N.E.2d 52, 55 (Ind. Ct. App. 2010). The stop involved in this case was an "investigatory" or "*Terry* stop," based on *Terry v. Ohio*, 392 U.S. 1 (1968). In conducting a *Terry* stop, "a police officer may briefly detain a person for investigatory purposes without a warrant or probable cause if, based upon specific and articulable facts together with rational inferences from those facts, the official intrusion is reasonably warranted and the officer has a reasonable suspicion that criminal activity 'may be afoot.'" *L.W.*, 926 N.E.2d at 55 (quoting *Terry*, 392 U.S. at 21-22).

> The "reasonable suspicion" requirement for a *Terry* stop is satisfied when the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. Reasonable suspicion entails something more than an inchoate and unparticularized suspicion or hunch, but considerably something less than proof of wrongdoing by a preponderance of the evidence.

*Rich v. State*, 864 N.E.2d 1130, 1132 (Ind. Ct. App. 2007).

[8] Reasonable suspicion sufficient to justify an investigatory stop is also less demanding than a showing of probable cause. *Ertel v. State*, 928 N.E.2d 261, 264 (Ind. Ct. App. 2010), *trans. denied*. If the facts known by the police at the time of the investigatory stop are such that a person of reasonable caution would believe the action taken was appropriate, the Fourth Amendment is satisfied. *Rich*, 864 N.E.2d at 1132. "If a police officer has a reasonable fear of

danger when making a *Terry* stop, he may conduct a carefully limited search of the suspect's outer clothing in an attempt to discover weapons that might be used to assault him." *Granados v. State*, 749 N.E.2d 1210, 1213 (Ind. Ct. App. 2001), *trans. denied*.

> [I]n a traffic-stop setting, the first *Terry* condition—a lawful investigatory stop—is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation. The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity. To justify a patdown of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous.

*Arizona v. Johnson*, 555 U.S. 323, 327 (2009).

[9] Here, A.A. admits that the officer acted lawfully in detaining the occupants of the vehicle[3] and in ordering him out of the vehicle. *See* Appellant's Br. at 9 ("Slightom legally ordered A.A. out of the car."). As for the ensuing patdown, A.A. maintains that "Slightom's additional, more intrusive step of patting [him] down [] to search him for weapons was not automatically justified." *Id*. He cites as support *Tumblin v. State*, 736 N.E.2d 317, 321-22 (Ind. Ct. App. 2000),

---

[3] Officer Slightom did not stop the vehicle in a literal sense; he merely approached the already stopped vehicle. In furtherance of investigating the gunfire incident, the officer could have lawfully stopped the vehicle. *See McKnight v. State*, 612 N.E.2d 586, 588 (Ind. Ct. App. 1993) (among the factors supporting a finding that officer had reasonable suspicion to conduct a *Terry* stop was the defendant's location in vicinity of reported incident), *trans. denied*. Nonetheless, the vehicle was subject to being stopped based on the infractions alone.

*trans. denied* (2002).[4] There, the defendant-passenger was subjected to a patdown during a routine traffic stop for the driver's speeding infraction. *Id.* Another panel of this Court found the general exploratory search unlawful and reversed Tumblin's conviction for carrying a handgun without a license. *Id.* at 323. The *Tumblin* court emphasized that *before* the officer inquired about weapons or drugs, the purpose of the initial traffic stop had been completed, with the officer having issued the driver a warning. *Id.* at 322. The court also held that vague and general observations of a detainee's nervousness, fidgeting, or averted eyes are not enough to establish reasonable suspicion. *Id.* at 322-23.

[10] We find *Tumblin* distinguishable. *Tumblin* involved a mere traffic stop for speeding, nothing more. The officer testified that the stop had concluded and the vehicle's occupants were "free to go," although he had not notified them as such, when he generally asked whether the vehicle's occupants had any weapons or drugs. *Id.* at 320. Here, Officer Slightom detained the vehicle's occupants in the midst of investigating reported gunfire in the immediate area just minutes before, based on the driver's infractions and the peculiar behavior that he observed. During the stop, the nervousness and avoidance of eye contact exhibited by A.A.'s driver was directly related to the officer's question concerning the presence of firearms inside the vehicle.

---

[4] A.A. also cites as support *State v. Cunningham*, 4 N.E.3d 805 (Ind. Ct. App. 2014), *trans. granted*. Our supreme court vacated the opinion, and it may no longer be cited as precedent. *See State v. Cunningham*, 26 N.E.3d 21, 26 (Ind. 2015) (reversing trial court's grant of defendant's motion to suppress drugs and paraphernalia found during patdown he submitted to as condition of exiting vehicle during traffic stop).

A.A. asserts that the driver's suspicious conduct and demeanor cannot be attributed vicariously as support for a finding of reasonable suspicion as to other occupants of the vehicle. While generally speaking, we agree, we believe that such an inquiry would be heavily fact-sensitive. Where the inquiry concerns a matter specific to the driver, for example, whether he is operating while intoxicated, the driver's observable demeanor and behavior certainly would not inure to the detriment of his passenger in the sense that one person's intoxication is not transferred by association. However, here, the investigation concerned all the vehicle's occupants, that is, whether *any* of them possessed a firearm. As such, the driver's flustered demeanor and averted eyes when asked if there was a firearm in the vehicle could implicate not merely his own possession but also his knowledge of such possession by one of his passengers.

Numerous articulable facts and circumstances support a finding that Officer Slightom was acting on reasonable suspicion and not merely on a hunch when he patted down A.A.: (1) Officer Slightom knew that another officer had reported hearing gunshots just minutes earlier; (2) the vehicle in which A.A. was a passenger was within two blocks of the reported location of the gunshots; (3) the vehicle passed by the officer very slowly; (4) the driver behaved unusually in pulling off the road after rolling through the stop sign and *before* the officer activated his patrol lights; (5) the driver was shaky and avoided eye contact when Officer Slightom asked whether there were any firearms in the vehicle; (6) the officer was unable to confirm A.A.'s identity based on the

information that he provided;[5] (7) the first person patted down (the driver) was found to be unarmed; and (8) even after Officer Faulk arrived as backup, the officers were outnumbered, three to two.

[13]  Considering the "reasonable inferences that [Officer Slightom] [w]as entitled to draw from the facts in light of his experience," we conclude that he acted within the protective purpose of *Terry* in patting down A.A.  *Hill v. State*, 956 N.E.2d 174, 177 (Ind. Ct. App. 2011), *trans. denied* (2012).  A patdown search is reasonable "if the facts are such that a reasonably prudent person in the same circumstances would be warranted in believing that the officer was in danger." *Id*.  The reason that Officer Slightom was patrolling the specific area was to investigate the source of the gunshots.  As such, the safety risk, especially in the dark of night, necessitated even greater caution than a circumstance in which the officer's investigation involves a non-firearm-related incident.  For example, an undiscovered bag of marijuana or cocaine does not present an imminent danger to an officer investigating a drug incident; neither does an undiscovered stash of stolen cash.  The driver acted suspiciously when directly asked whether a firearm was in the vehicle, and the officer patted him down and found him to be unarmed.  Based on this information, Officer Slightom could reasonably suspect that a firearm was otherwise present in the vehicle, either on the person

---

[5] Notwithstanding A.A.'s argument that a sixteen-year-old would not ordinarily possess written identification if he had never obtained a driver's license, the problem that Officer Slightom encountered concerned various birthdates associated with A.A.'s name that did not match the one A.A. verbally gave to the officer.

of one of the passengers – which would make that passenger "armed and dangerous" – or stashed elsewhere within the vehicle. The officer then ordered the front-seat passenger A.A. to step outside the vehicle, an action that A.A. admits was lawful. The ensuing patdown of A.A., which proved only minimally intrusive, was lawful based on reasonable inferences Officer Slightom drew concerning the presence of firearms either on A.A.'s person or elsewhere in the vehicle.[6] Based on the foregoing, we conclude that the officer did not violate A.A.'s Fourth Amendment rights.

## Section 2 – The officer did not violate A.A.'s rights under the Indiana Constitution.

[14] A.A. raises a similar claim of illegal search and seizure based on Article 1, Section 11 of the Indiana Constitution, which states in pertinent part, "The right of the people to be secure in their persons … against unreasonable search or seizure, shall not be violated." While the language tracks that of the Fourth Amendment, Indiana's search and seizure clause is subject to a slightly different analysis, that is, we evaluate the reasonableness of the police conduct under the "totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359-60 (Ind. 2005). Subject to other relevant considerations under the circumstances, the reasonableness of a search or seizure turns on a balance of: "(1) the degree of concern, suspicion, or knowledge that a violation has occurred, (2) the degree of

---

[6] It is unclear from the record whether the vehicle's third occupant was patted down.

intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and (3) the extent of law enforcement needs." *Id.* at 361. The State bears the burden of establishing that, in the totality of the circumstances, the intrusion was reasonable. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001).

[15]
> A police stop and brief detention of a motorist is reasonable and permitted under Section 11 if the officer reasonably suspects that the motorist is engaged in, or about to engage in, illegal activity. Reasonable suspicion exists if the facts known to the officer, together with the reasonable inferences arising therefrom, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur.

*Id.* at 786-787 (citations omitted). "[R]easonableness under the totality of circumstances may include consideration of police officer safety." *Saffold v. State*, 938 N.E.2d 837, 840 (Ind. Ct. App. 2010), *trans. denied* (2011).

[16] In balancing the factors enunciated in *Litchfield*, we note first that Officer Slightom's degree of concern, suspicion, or knowledge of criminal conduct by A.A. and his two companions was not initially high, since the report did not include descriptions of persons or vehicles. The group was simply driving late at night in very close proximity, both geographically and timewise, to the reported gunshots. However, the officer could reasonably consider their overall conduct in passing him slowly, pulling off the road for no reason, failing to provide any authenticatable identification, avoiding eye contact, and acting nervous when asked whether they had firearms.[7] Notwithstanding, the degree

---

[7] As discussed, the presence of firearms in the vehicle was not a question that applied uniquely to the driver.

of intrusion was minimal, considering that the butt of the handgun was protruding from the first place the officer touched – A.A.'s waistband.  Finally, the extent of law enforcement needs – to ensure the safety of two officers outnumbered by three suspects – is very high, specifically because of the gunfire report and generally because of the danger posed by the presence of firearms.  Consequently, we conclude that law enforcement acted reasonably under the totality of the circumstances, and as such, did not violate A.A.'s rights under Article 1, Section 11 of the Indiana Constitution.  Accordingly, we find no abuse of discretion in admitting the firearm and therefore affirm.

[17]  Affirmed.

Brown, J., and Pyle, J., concur.