CRONE, Judge,
dissenting.
[26] Being mindful' that we not only must articulate the proper standard for reviewing the constitutionality of a pat-down under the Fourth Amendment but also adhere to that standard, I respectfully dissent from the majority’s decision to affirm Johnson’s conviction.[1]
*665 [27] The U.S. Supreme Court has repeatedly emphasized that in order “[t]o justify a patdown ... of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous.” Arizona v. Johnson, 555 U.S. 323, 327, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009) (emphasis added). “Reasonable suspicion entails something more than an inchoate and unparticular-ized suspicion or hunch[.]” Crabtree v. State, 762 N.E.2d 241, 246 (Ind.Ct.App.2002). In other words, the suspicion must be particularized concerning the suspect, not merely a general concern about people with weapons. Hill v. State, 956 N.E.2d 174, 179 (Ind.Ct.App.2011), trans. denied (2012).
[28] Officer Bridgeforth initiated the detention because he suspected that the obviously inebriated Sanders and the possibly inebriated Johnson were violating bus station policies[2] prohibiting loitering and intoxication.[3] With respect to Johnson specifically, there was no evidence that he was committing the crime of public intoxication. See Ind.Code § 7.1-5-l-3(a) (requiring a showing of breach of the peace, endangerment, harassment,' annoyance, or alarm). He may or may not have been drinking and was simply walking through the bus station with his inebriated friend, without a ticket. This leaves me wondering why the officer did not merely admonish Johnson to leave the station and take Sanders with him.
[29] The issue comes down to whether Johnson putting his hand in his pants pocket and refusing to remove it created a reasonable suspicion that -he was armed and dangerous. I think not. A hand in a pocket is not evidence that a person is armed and dangerous. The majority emphasizes Officer Bridgeforth’s direct-examination testimony that his safety concern increased when Johnson placed'his hand in his pocket.[4] When asked why his concern increased, the officer answered in terms of possibilities and general concerns: “Because of the possibility that he could have a weapon on him and that is how several officers are killed in this country every year.” Tr. at, 33. Notwithstanding, during cross examination, the officer agreed that he “didn’t have any particular reason to believe that [Johnson] had a gun or a weapon.” Id. at 47. I believe that the latter testimony more specifically addresses the Fourth Amendment standard of proof and disagree with the majority’s conclusion that “[t]his testimony demonstrates only that Officer Bridgeforth did not know for certain that Johnson was armed.” Op. at 663.
[30] Undoubtedly, officer safety is a significant priority, and in many cases, a patdown is not unreasonably intrusive. However, we must adhere to the Fourth Amendment standard as articulated by the U.S. Supreme Court. Johnson’s behavior was disrespectful and disobedient, maybe *666 even arrogant, but the articulated standard requires a particularized suspicion that he was “armed and dangerous.” If our supreme court wishes to interpret the Fourth Amendment as allowing a hand-in-the-pants-pocket exception to the rule that a police officer must harbor a reasonable and particularized suspicion that a person is armed and dangerous before the officer may perform a lawful patdown search, it is certainly free to do so. As a practical matter, such an exception might be justified based on officer safety concerns, especially in light of the current tensions surrounding police-citizen interactions. In my view, carving out an exception would be a more appropriate jurisprudential approach than engaging in legal fiction in order to circumvent the “armed and dangerous” standard. Until then, however, I believe we must adhere to the currently articulated standard, which contains no such exception.
[31] In short, I believe that the pat-down of Johnson constituted an unlawful search under the Fourth Amendment. Because the firearm was the product of that search, it should have been excluded. See Hill, 956 N.E.2d at 179 (explaining that “fruit of the poisonous tree doctrine” bars evidence directly obtained or derivatively gained from unlawful search or seizure). On that basis, I would reverse his conviction for possession of a firearm by anSVF.

. Our supreme court has recently ádmon-ished this Court for correctly stating but incorrectly applying the proper standard of review. See, e.g., Civil Commitment of T.K., 27 N.E.3d 271/274 (Ind.2015) (disapproving line of cases reciting but not applying clear and convincing standard of proof in civil commitment cases); see also Brummett v. State, 24 N.E.3d 965, 966 (Ind.2015) (clarifying that standárd when reviewing for fundamental er *665 ror has not changed despite Court of Appeals’ potentially confusing reference to standard "now” to be used when reviewing for fundamental error).

.To the extent that the State cites Johnson’s lack of identification as an articulable fact supporting a patdown, we note the officer’s testimony that the identification information was important in determining whether either of the two men was on the premises without having a ticket or otherwise "utilizing the services.” Tr. at 46.

. The officer testified that Greyhound policy prohibits an intoxicated person from boarding a bus or even being inside the terminal.

. "Q. Okay-Did Mr. Johnson’s decision to put his hand in his pocket increase or decrease your officer safety concern?’ A. Increased.” Tr. at 33.