## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 17 2020, 10:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ash O. Kulak
Lawrence County
Public Defender Agency
Bedford, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| D.H., <br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff,* | July 17, 2020 <br><br> Court of Appeals Case No. <br> 19A-JV-2403 <br><br> Appeal from the Lawrence Circuit Court <br><br> The Honorable Nathan G. Nikirk, Judge <br><br> Trial Court Cause No. <br> 47C01-1811-JD-377 |

**Robb, Judge.**

# Case Summary and Issues

[1]     D.H. appeals his adjudication as a delinquent child for what would be possession of marijuana, a Class B misdemeanor if committed by an adult. D.H. raises multiple issues for our review, which we consolidate and restate as whether the juvenile court abused its discretion by admitting evidence obtained in violation of D.H.'s rights under the Fourth Amendment to the United States Constitution and Article 1, section 11 of the Indiana Constitution. Concluding D.H.'s rights were not violated under either constitutional provision and the juvenile court did not abuse its discretion, we affirm D.H.'s adjudication.

# Facts and Procedural History[1]

[2]     On October 2, 2018, seventeen-year-old D.H. left a friend's house and was headed to his grandmother's house located in a trailer park when he met two other friends and the three began walking down the street. At the same time, Captain Morgan Lee of the Bedford Police Department ("BPD") was patrolling the area in full uniform and in a marked police vehicle. Captain Lee saw D.H. and his friends walking east and as he passed them going west, "they all kind of stopped and looked at [him] and gave [him]. . . a funny look." Transcript of Evidence, Volume 2 at 7. Captain Lee watched the boys in his rearview mirror

---

[1] The facts in this case are comprised of testimony from the factfinding hearing held on July 23, 2019, as well as evidence from the suppression hearing held on July 2 that is not in direct conflict with evidence introduced at the factfinding hearing. *See Kelley v. State*, 825 N.E.2d 420, 426 (Ind. Ct. App. 2005).

and noticed that they "seemed to start walking off real fast" as if "they were trying to avoid [him]." *Id.* at 7, 42.

[3] Captain Lee hit his brakes, turned around, and noticed that D.H. and his friends "hurried off" into the trailer park. *Id.* at 42. Captain Lee drove into the trailer park to locate them. Captain Lee did not activate any lights or sirens on his police vehicle. When Captain Lee located D.H. and his friends, he "stopped right there with all three of them." *Id.* at 44. Captain Lee asked why they were "acting so suspiciously[,]" requested their identification, and called dispatch to have their information run through the police system. *Id.* at 42. By this time, BPD Major Jeremy Bridges had arrived on the scene in full uniform after receiving a call from Captain Lee for backup.

[4] While Captain Lee was waiting on dispatch to return information concerning the juveniles,[2] Major Bridges was standing next to the juveniles and identified an odor of raw marijuana. Major Bridges was closest to D.H. and believed the odor came from his direction. Major Bridges then conducted a patdown of D.H.'s outer garments and felt "a baggie with what [he] believe[d] to be a plant-like material." *Id.* at 20. From his training and experience, Major Bridges believed it to be marijuana. When Major Bridges asked what it was, D.H. responded, "I don't know. Probably a little bag of weed or something." *Id.* at 57. Major Bridges reached inside D.H.'s left pants pocket and found a baggy

---

[2] No reports were returned about D.H., but dispatch reported that one of the other juveniles was a runaway.

containing a plant-like material, which later field-tested positive for marijuana. The officers arrested D.H. and transported him to BPD.

[5] On November 9, 2018, the State filed a delinquency petition, alleging D.H. committed possession of marijuana, a Class B misdemeanor if committed by an adult. D.H. filed a motion to suppress alleging that the marijuana was obtained from an unlawful investigatory stop, search, and seizure. A hearing was held on that motion on July 2, 2019, and the juvenile court denied D.H.'s motion to suppress from the bench. Specifically, the juvenile court concluded,

> The individuals were in a group. The officer turned around. I don't know why he went back, but he did and he went and talked with them. The individuals at that time were free to leave. They were not in custody at that point. And I heard no testimony today . . . that the officers told the boys during the initial contact that they were compelled to stay there, that they had to stay. The testimony is pretty clear that . . . during the conversation between the officer and the boys, the officer smelled marijuana, that creates the reasonable suspicion at that point. It sounds like a pat-down was then conducted. Marijuana was found. There's probable cause for the arrest.

*Id*. at 34-35.

[6] At the factfinding hearing, the juvenile court admitted into evidence pictures of the marijuana over D.H.'s objection. D.H. was adjudicated a delinquent child and on September 10, 2019, the juvenile court entered its dispositional order, ordering D.H. to pay court costs and fees. D.H. now appeals his adjudication.

# Discussion and Decision

[7] D.H. argues that evidence concerning his possession of marijuana should have been excluded from his factfinding hearing because it was obtained in violation of his rights under the Fourth Amendment to the United States Constitution and Article 1, section 11 of the Indiana Constitution. Two warrantless encounters merit discussion in this case: (1) the initial encounter between D.H. and Captain Lee and (2) the patdown of D.H. by Major Bridges.

# I. Standard of Review

[8] D.H. brings this appeal following his factfinding hearing, rather than as an interlocutory appeal of the denial of his motion to suppress and therefore, we review this appeal as a challenge to the juvenile court's admission of evidence at the factfinding hearing. *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). A juvenile court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Young v. State*, 980 N.E.2d 412, 417 (Ind. Ct. App. 2012). A juvenile court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances or when the court has misinterpreted the law. *Id.* We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Patterson v. State*, 958 N.E.2d 478, 482 (Ind. Ct. App. 2011). We also consider uncontested evidence favorable to the defendant. *Id.* The constitutionality of a search is a question of law, which we review de novo. *Kelly v. State*, 997 N.E.2d 1045, 1050 (Ind. 2013).

Similarly, determinations of reasonable suspicion and probable cause are reviewed de novo. *Myers v. State*, 839 N.E.2d 1146, 1150 (Ind. 2005).

## II. The Fourth Amendment

The Fourth Amendment to the United States Constitution guarantees:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

This protection has been extended to the States through the Fourteenth Amendment. *Sanders v. State*, 989 N.E.2d 332, 335 (Ind. 2013). To deter state actors from violating the prohibition against unreasonable searches and seizures, evidence obtained in violation of the Fourth Amendment is generally not admissible in a prosecution of the person whose rights were violated. *Clark*, 994 N.E.2d at 260; *see also Segura v. United States*, 468 U.S. 796, 804 (1984) (noting the exclusionary rule encompasses both "primary evidence obtained as a direct result of an illegal search or seizure" and any "evidence later discovered and found to be derivative of an illegality"); *Hill v. State*, 956 N.E.2d 174, 177 (Ind. Ct. App. 2011) (holding that evidence obtained from an illegal search was "fruit of the poisonous tree" and therefore inadmissible), *trans. denied*. Under the Fourth Amendment, warrantless searches and seizures are per se unreasonable, subject to a "few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). When a defendant

challenges a warrantless search, it is the State's obligation to prove the search fell within an exception to the warrant requirement. *Clark*, 994 N.E.2d at 260.

[10] It is not the purpose of the Fourth Amendment to eliminate all contact between police and citizenry, however. *United States. v. Mendenhall*, 446 U.S. 544, 553 (1980). We have recognized three levels of police investigation, two of which implicate Fourth Amendment protections and one of which does not:

> First, the Fourth Amendment requires that an arrest or detention for more than a short period be justified by probable cause. Probable cause to arrest exists where the facts and circumstances within the knowledge of the officers are sufficient to warrant a belief by a person of reasonable caution that an offense has been committed and that the person to be arrested has committed it. Second, it is well-settled Fourth Amendment jurisprudence that police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based upon specific and articulable facts, the officer has a reasonable suspicion that criminal activity "may be afoot." Accordingly, limited investigatory stops and seizures on the street involving a brief question or two and a possible frisk for weapons can be justified by mere reasonable suspicion. Finally, the third level of investigation occurs when a law enforcement officer makes a casual and brief inquiry of a citizen which involves neither an arrest nor a stop. In this type of "consensual encounter" no Fourth Amendment interest is implicated.

*Overstreet v. State*, 724 N.E.2d 661, 663 (Ind. Ct. App. 2000) (citations omitted), *trans. denied*.

## A. Encounter with Captain Lee

D.H. first argues that his encounter with Captain Lee was in violation of his rights under the Fourth Amendment because Captain Lee stopped him on a hunch rather than reasonable articulable suspicion of criminal activity and D.H. did not feel free to leave. The State maintains there was no violation of the Fourth Amendment because the initial encounter between Captain Lee and D.H. was "consensual." Brief of Appellee at 10. We agree with the State.

When determining whether an interaction was a consensual encounter, our evaluation turns on "whether a reasonable person would feel free to disregard the police and go about his or her business." *Clark*, 994 N.E.2d at 261 (quotation omitted). The test is objective; therefore, we consider not whether the particular citizen actually felt free to leave, but whether the officer's words and actions would have conveyed to a reasonable person that he was not free to leave. *Id.*[3] Examples of facts and circumstances that might lead a reasonable person to believe he was no longer free to leave could include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."

---

[3] At both the suppression hearing and the fact-finding hearing, Captain Lee described his interaction with the boys as a consensual encounter. *See* Tr., Vol. 2 at 13 (when D.H.'s counsel on cross examination asked, "[T]hey weren't really free to go at that point?," Captain Lee answered, "It was a consensual encounter.") and 42 (when asked what happened after he made contact with the boys, Captain Lee answered, "I . . . made a consensual encounter with them."). The test is not based on the officer's viewpoint but on a reasonable citizen's and an officer merely invoking those words in a report or from the stand does not make it so.

*Overstreet*, 724 N.E.2d at 664. "In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *Id*. (citing *Mendenhall*, 466 U.S. at 555).

[13] D.H. argues his encounter with Captain Lee was not consensual and compares his case to *Dowdell v. State*, 747 N.E.2d 564 (Ind. Ct. App. 2001), *trans. denied*. In *Dowdell*, a police officer drove by the defendant and, from a distance of about fifteen feet, observed the defendant smoking what appeared to be a "blunt."[4] *Id*. at 565. The defendant was not acting suspiciously, and the officer admitted that he could not tell whether the defendant was smoking a blunt or a cigar. The officer stopped his vehicle and said something along the lines of "hey come here" or "what are you doing?" to the defendant. *Id*. The defendant threw the blunt down, walked over to the police officer with what appeared to be plastic baggies in one hand, and then put both hands in his pockets. The officer noticed a strong odor of marijuana, so he handcuffed the defendant and questioned him about the baggies. The defendant was transported to the police station where officers later found marijuana and cocaine in baggies in his pocket. The defendant was charged with and found guilty of possession of cocaine and possession of marijuana. On appeal, the defendant argued the police officer did not have reasonable suspicion to conduct an investigatory stop when he

---

[4] A blunt is a cigar that contains marijuana. *Id*. at 565 n.3.

questioned him about the blunt and therefore, violated his Fourth Amendment rights. The State replied that the encounter between the defendant and the police officer was consensual, did not constitute a stop, and thus, did not implicate the Fourth Amendment. We concluded that the encounter constituted a stop that required reasonable suspicion because the defendant's compliance was compelled after the officer in a marked police car pulled up to him and called him over. *Id*. at 567. Specifically, we noted, "A reasonable person when faced with a police officer pulling up to him in a marked vehicle and calling for him to come over to the car would not assume that he can just turn and walk away." *Id*. Accordingly, we reversed the defendant's convictions because the evidence of marijuana and cocaine was discovered as the result of an illegal stop.

[14] This case is distinguishable from *Dowdell*. Here, Captain Lee observed D.H. and his friends act strangely when he passed them on routine patrol. When Captain Lee turned around, the juveniles hurried into the nearby trailer park. When Captain Lee caught up to the juveniles, he did not stop them or tell them to come over to him, unlike the officer in *Dowdell*. Instead, he stopped near them while they were standing in a group. Captain Lee did not activate the lights or sirens on his vehicle, did not have a threatening presence, did not physically touch D.H. or his friends, did not detain them, and there was no evidence he displayed any weapons other than those visible on his uniform or spoke to the boys in a tone that would indicate their compliance was compelled. Captain Lee merely asked why they were acting suspiciously and asked for their

identification, which was essential to Captain Lee's investigation. *See Cochran v. State*, 843 N.E.2d 980, 984 (Ind. Ct. App. 2006) ("Asking questions is an essential part of police investigations. In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment.") (citation omitted), *trans. denied*, *cert. denied*, 549 U.S. 1122 (2007).

[15] To the extent D.H. argues, based on his own testimony, that Captain Lee called them over to him, our standard of review requires us to consider conflicting evidence in favor of the trial court's ruling, *see Patterson*, 958 N.E.2d at 482, and the evidence favorable to the ruling is that Captain Lee approached D.H., did not have a threatening presence, and did not "holler" at D.H. to compel compliance as he suggests. Brief of Defendant-Appellant at 16. Therefore, under the circumstances of this case, Captain Lee's encounter with D.H. was consensual, did not constitute a "seizure," and did not implicate the Fourth Amendment. *See Woodson v. State*, 966 N.E.2d 135, 140 (Ind. Ct. App. 2012) (holding that police encounter with the defendant was consensual rather than a seizure within the meaning of the Fourth Amendment because officers, who received a report of a couple fighting in the street, did not have a threatening presence, their weapons drawn, or the lights on their cars activated when they approached the defendant and his female companion while they were on the sidewalk), *trans. denied*.

## B. Search by Major Bridges

[16]     When the report from dispatch did not return anything negative about D.H., the officers could not lawfully continue the encounter with D.H. without reasonable suspicion or probable cause to do so. D.H. contends that Major Bridges violated his Fourth Amendment rights by conducting a patdown without any reasonable suspicion that he was armed or dangerous. *See* Br. of Defendant-Appellant at 25.

[17]     D.H. is correct, inasmuch as the officers were not conducting an investigatory stop supported by reasonable suspicion that criminal activity might be afoot and Major Bridges admitted at the fact-finding hearing that he was not concerned about D.H. being armed or dangerous. *See* Tr., Vol. 2 at 52; *see also Curry v. State*, 90 N.E.3d 677, 687 (Ind. Ct. App. 2017) (noting that an officer may conduct a patdown "when the officer has reason to believe he is dealing with an armed and dangerous individual, regardless of whether there is probable cause to arrest the individual for a crime") (citing *Terry v. Ohio*, 392 U.S. 1, 27 (1968)), *trans. denied; Bell v. State*, 144 N.E.3d 791, 797-98 (Ind. Ct. App. 2020) (noting that when, during an initially consensual encounter, officers developed reasonable suspicion that the defendant possessed an illegal firearm, they were justified in conducting a limited patdown for weapons).

[18]     However, as previously noted, warrantless searches and seizures, although per se unreasonable under the Fourth Amendment, are subject to a few specific exceptions. *Katz*, 389 U.S. at 357. "One exception to the warrant requirement is

the search incident to arrest, which permits 'a search of the arrestee's person and the area within his or her control.'" *Durstock v. State*, 113 N.E.3d 1272, 1278 (Ind. Ct. App. 2018) (quoting *Clark*, 994 N.E.2d at 261 n.10), *trans. denied*. An officer may conduct a search incident to a lawful arrest if the officer has probable cause to make an arrest. *Curry*, 90 N.E.3d at 687. The fact that a person was not formally under arrest at the time of the search will not invalidate the search. *Moffitt v. State*, 817 N.E.2d 239, 247 (Ind. Ct. App. 2004), *trans. denied*.

[19] Probable cause exists "when the totality of the circumstances establishes 'a fair probability'—not proof or a prima facie showing—of criminal activity, contraband, or evidence of a crime." *Hodges v. State*, 125 N.E.3d 578, 582 (Ind. 2019) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The determination of probable cause is based on the "factual and practical considerations of everyday life upon which reasonable and prudent persons act." *State v. Hawkins*, 766 N.E.2d 749, 751 (Ind. Ct. App. 2002), *trans. denied*.

[20] In *Bell v. State*, 13 N.E.3d 543 (Ind. Ct. App. 2014), *trans. denied,* we held that when an officer smelled a strong odor of raw marijuana coming from the defendant's person, the officer had probable cause to arrest the defendant because "the smell of raw marijuana on a person is sufficient to provide probable cause that the person possesses marijuana." *Id.* at 545-46. Therefore, it was permissible under the Fourth Amendment for the officer to conduct a patdown search incident to arrest. *Id.* at 546; *see also Edmond v. State*, 951 N.E.2d 585, 591 (Ind. Ct. App. 2011) (holding that where officers "specifically

smelled marijuana on [defendant's] breath" as well as emanating from his vehicle, "a person of reasonable caution would be warranted in the belief [defendant] possessed marijuana" and therefore had probable cause to arrest and search the defendant); *cf. Meek v. State*, 950 N.E.2d 816, 820 (Ind. Ct. App. 2011) (rejecting the defendant's contention that although the odor of raw marijuana emanating from his vehicle during a traffic stop might have provided probable cause to search the vehicle, it did not provide probable cause to search *his person* and concluding the smell, combined with the defendant's admission he had smoked marijuana earlier in the day and the officers' failure to find the source of the odor in the vehicle, supported the reasonableness of the patdown search of the defendant under the state constitution), *trans. denied*.

[21] Here, Major Bridges arrived on the scene at the same time Captain Lee was obtaining information from dispatch on the three boys. While Major Bridges was standing with the boys and within a shoulder's length of D.H., he identified an odor of raw marijuana and due to his proximity to D.H., reasonably inferred the smell was emanating from D.H. As in *Bell*, the smell of marijuana coming from D.H. was sufficient to provide probable cause for Major Bridges to arrest D.H. for possession of marijuana and conduct a patdown incident to his arrest. During the patdown, Major Bridges felt a baggie containing what he believed to be a plant-like material and D.H. admitted it was "probably a little bag of weed or something." *Id*. at 57. Major Bridges then reached inside D.H.'s left pocket and found the marijuana. The patdown and subsequent search did not violate D.H.'s Fourth Amendment rights.

[22] We therefore conclude that neither Captain Lee's initial encounter with D.H. nor Major Bridges' subsequent patdown after smelling marijuana violated the Fourth Amendment to the United States Constitution.

## II. Article 1, Section 11

[23] D.H. also argues that his seizure was unreasonable under Article 1, section 11 of the Indiana Constitution, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

[24] Although Article 1, section 11 is virtually identical to the Fourth Amendment textually, Indiana courts interpret the state constitutional provision differently from the federal provision: "The legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005) (internal citation omitted). We consider the following three factors in determining the reasonableness of a warrantless search: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Id*. at 361. It is the State's burden to demonstrate the reasonableness of the intrusion. *State v. Gerschoffer*, 763 N.E.2d 960, 965 (Ind. 2002).

[25] Beginning with the first factor in *Litchfield*, D.H. argues that the degree of suspicion that a violation occurred was "very low[.]" Br. of Defendant-Appellant at 41. As Captain Lee drove by D.H. and his friends, he observed them act suspiciously and hurry into a nearby trailer park. Captain Lee described the boys' behavior as "odd" and "uneasy." Tr., Vol. 2 at 15. Captain Lee then located the boys to investigate their behavior and subsequently asked for their identification. Captain Lee asked dispatch to run their information and discovered that one of them was a runaway. And while Major Bridges was standing near the boys as this information was gathered, he detected an odor of marijuana emanating from D.H. Under the totality of the circumstances, the odor of marijuana, the subsequent patdown, and D.H.'s admission that he possibly had marijuana on him, taken together with the reasonable inferences arising from such facts, gave Major Bridges suspicion to investigate further. Captain Lee and Major Bridges had a high degree of suspicion that a violation had occurred. Thus, this factor weighs in favor of the State.

[26] As for the second factor – the degree of intrusion – we conclude it was minimal. The degree of intrusion is assessed from the defendant's point of view. *Mundy v. State*, 21 N.E.3d 114, 118 (Ind. Ct. App. 2014). Until Major Bridges conducted a patdown of D.H., D.H.'s encounter with Captain Lee and Major Bridges was consensual as we concluded above. D.H. was not detained and neither officer had a threatening presence that would have suggested compelled compliance. Once Major Bridges smelled marijuana, this gave him reason to conduct a patdown of D.H., during which he felt "a baggie with what [he] believe[d] to be

a plant-like material." Tr., Vol. 2 at 20. D.H. then admitted that the bag probably contained marijuana. Only then did Major Bridges reach inside D.H.'s left pocket and locate the marijuana. The degree of intrusion was low and therefore, this factor weighs in favor of the State.

[27] Finally, as to the extent of law enforcement needs, this court considers of the nature and immediacy of the governmental concern. *Masterson v. State*, 843 N.E.2d 1001, 1007 (Ind. Ct. App. 2006), *trans. denied*. Here, the extent of law enforcement needs was significant because after Major Bridges identified the odor of marijuana, it was necessary to determine whether the boys were concealing any illegal drugs or involved in drug activity, and also to ensure that any evidence would not be removed or destroyed. The articulated needs of law enforcement were high with respect to this situation and therefore, this factor weighs in favor of the State. We conclude the *Litchfield* factors weigh in favor of the State and the reasonableness of the search. Accordingly, the search of D.H. was permissible under Article 1, section 11 of the Indiana Constitution.

# Conclusion

[28] For the reasons set forth above, the brief "consensual encounter" with Captain Lee and the subsequent search by Major Bridges did not violate D.H.'s rights under the Fourth Amendment to the United States Constitution or Article 1, section 11 of the Indiana Constitution and therefore, the juvenile court did not abuse its discretion when it admitted pictures of the marijuana found in D.H.'s

possession into evidence. Accordingly, we affirm D.H.'s adjudication as a delinquent.

[29]     Affirmed.

May, J., and Vaidik, J., concur.