# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2186

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Mark Salamasina, | * |
| | * |
| Appellant. | * |

_____

No. 09-2188

_____

Appeals from the United States
District Court for the
Western District of Missouri.

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Joanina Lata, | * |
| | * |
| Appellant. | * |

_____

Submitted: January 15, 2010
Filed: August 6, 2010

_____

Before GRUENDER and SHEPHERD, Circuit Judges, and LANGE,[1] District Judge.
_____

SHEPHERD, Circuit Judge.

Reserving their right to appeal the district court's[2] adverse ruling on their joint motion to suppress evidence, Mark Salamasina and Joanina Lata conditionally pled guilty to charges of cocaine possession and distribution, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, 856(a)(1), and 18 U.S.C. § 2. In this appeal, Salamasina and Lata challenge the denial of their motion to suppress. We affirm.

I.

In early 2008, law enforcement officers in Texas arrested Juan Portugal when he attempted to buy 50 kilograms of cocaine from undercover officers. Portugal began cooperating with the government and identified Salamasina, of Independence, Missouri, as a frequent purchaser of cocaine and marijuana. According to Portugal, Salamasina owed him approximately $60,000 for cocaine and marijuana that Portugal had previously fronted Salamasina. In phone calls monitored by law enforcement authorities, Salamasina acknowledged his debt and arranged travel to Texas to pay part of the debt. Salamasina made the trip and paid $32,200 of the debt to Portugal. This meeting was recorded by law enforcement. Salamasina then requested up to five kilograms of cocaine. Portugal responded that Salamasina would have to pay $1,000 per kilogram to cover the cost of transporting the cocaine from Texas to Missouri. Salamasina sent $5,000 through postal money orders to an address provided by

[1]The Honorable Roberto A. Lange, United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, adopting the report and recommendations of the Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri.

Portugal, and in the weeks following this transfer of money, Salamasina and Portugal regularly communicated about the status of the drug delivery.

In August 2008, Detective Aaron Gietzen of the Independence Police Department received information that Drug Enforcement Administration (DEA) officers in Texas had secured an arrest warrant for Salamasina. DEA Special Agent John Hover traveled from San Antonio, Texas, to Independence, Missouri, to serve the arrest warrant on Salamasina. Officers conducted surveillance of the house where they suspected Salamasina was residing. As a white Ford Expedition that matched the description of Salamasina's suspected vehicle approached, the garage door at the residence opened, and the vehicle neared the garage entry. Officers approached the vehicle, identified Salamasina, took him into custody, and moved him to a location next to a patrol car and away from the vehicle. Joanina Lata, Salamasina's fiancée, and her two minor children were also in the vehicle.

Officers asked Salamasina for permission to search his residence, and Salamasina refused. Detective Gietzen then identified himself to Lata and asked her for permission to search the residence she shared with Salamasina. Lata asked if Detective Gietzen had a search warrant, and when he responded that he did not, Lata refused consent to search the residence. Following her refusal, Lata stated that she was going to close the garage door and took a few steps towards the garage door. Detective Gietzen directed Lata to leave the door open and to remain away from the residence until officers determined whether they would seek a search warrant. Lata then sought to reenter the vehicle from the driver's side. Believing that she might attempt to activate the remote control for the garage door, Detective Gietzen forbade Lata from entering the vehicle from the driver's side. Lata was allowed to enter the vehicle from the passenger side to tend to the children in the backseat. During this time, Salamasina shouted at Lata to not let the officers into the house and, over orders from the officers not to communicate with one another, Salamasina and Lata shouted to one another in a foreign language that the officers did not understand.

-3-

Detective Gietzen then conducted a warrantless search of the vehicle, looking for concealed weapons. He testified at the suppression hearing that he performed this search because Lata was unrestrained and was sitting in the vehicle to tend to her children who were in the backseat. During the search, Detective Gietzen recovered six bottles of inositol powder, a dietary supplement that is often used as a cutting agent for cocaine. The amount of inositol powder found constituted a six-year supply of the dietary supplement. Officers also found acetone in the vehicle. Acetone is used to give cocaine that has been mixed with inositol powder a more authentic cocaine smell.

Based on these findings, the officers summoned a canine unit to search the vehicle. The canine alerted to three areas in the vehicle, however no narcotics were located in any of these locations. The canine's handling officer testified at the suppression hearing that the odor of narcotics could remain for hours or days after the narcotics are removed and that the canine would continue to alert to the odor of the drugs.

Using the information collected in the searches of the vehicle, along with the information from the Texas investigation, Detective Gietzen applied for a search warrant of the residence. After securing the warrant, officers searched the residence and found cocaine, drug paraphernalia, ammunition, and cash. In a joint motion, Salamasina and Lata sought to suppress the evidence seized from the vehicle and the house. After the district court denied the suppression motion, Salamasina and Lata each entered conditional guilty pleas, reserving their rights to appeal the denial of the suppression motion.

II.

When reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and the legal question of whether the Fourth

Amendment was violated de novo. United States v. Williams, 577 F.3d 878, 880 (8th Cir. 2009). We will reverse the district court's decision only if it "is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." United States v. Harper, 466 F.3d 634, 643 (8th Cir. 2006) (quotation omitted).

A.

The first issue raised by Salamasina—and the only issue raised by Lata—is whether Detective Gietzen's warrantless search of the vehicle violated the Fourth Amendment. This question is relevant because the discovery of the inositol powder and acetone found during the search of the vehicle was included in the application for the search warrant of the residence. Appellants argue that the Supreme Court's recent ruling in Arizona v. Gant, 129 S. Ct. 1710 (2009), controls and invalidates the warrantless search because Salamasina was immediately restrained and removed from the vehicle, and officers, finding Lata to not be a threat, gave her permission to repeatedly access the vehicle to tend to her children.

In Gant, the Supreme Court rejected the broad interpretation of its prior rulings in search-incident-to-arrest cases that would authorize "a vehicle search . . . incident to every arrest of a recent occupant notwithstanding that in most cases the vehicle's passenger compartment will not be within the arrestee's reach at the time of the search." 129 S. Ct. at 1719. Rather, the Court held vehicle searches incident to arrest are justified under the Fourth Amendment "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." Id. The Supreme Court noted that a factual situation that would justify a search incident to an arrest on this ground "will be the rare case." Id. at 1719 n.4. The Court further noted that a vehicle search incident to arrest is justified "when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." Id. at 1719 (quotation omitted).

-5-

In addition to the two grounds for justifying a search incident to arrest discussed above, the Court stated:

> Other established exceptions to the warrant requirement authorize a vehicle search under additional circumstances when safety . . . concerns demand. For instance, Michigan v. Long, 463 U.S. 1032 (1983), permits an officer to search a vehicle's passenger compartment when he has reasonable suspicion that an individual, whether or not the arrestee, is "dangerous" and might access the vehicle to "gain immediate control of weapons." Id. at 1049 (citing Terry v. Ohio, 392 U.S. 1, 21 (1968)).

Gant, 129 S. Ct. at 1721.

Since Gant, we have decided two cases which present facts analogous to those presented by this case: United States v. Davis, 569 F.3d 813 (8th Cir. 2009) and United States v. Goodwin-Bey, 584 F.3d 1117 (8th Cir. 2009), cert. denied, 130 S. Ct. 1563 (2010). In Davis, we found that a search incident to arrest was permissible under Gant where the driver had been arrested for possession of marijuana and restrained in a patrol car, the odor of marijuana from the car was noticeable, there were beer bottles in the back seat of the car, and "[t]hree passengers, all of whom had been drinking, were not in secure custody and outnumbered the two officers at the scene." Davis, 569 F.3d at 817. We held that these facts were "textbook examples of '[t]he safety and evidentiary justifications'" justifying a search incident to arrest. Id. (quoting Gant, 129 S. Ct. at 1714).

In Goodwin-Bey, an officer stopped a vehicle driven by Goodwin-Bey, a convicted felon, for running a red light. 584 F.3d at 1118. The car contained three other occupants. Id. During the stop, the officer received a report of an earlier incident where a firearm had been displayed by passengers in a vehicle matching the description of Goodwin-Bey's automobile. Id. The officer also learned that one of the occupants had an outstanding arrest warrant. Id. That occupant was arrested, and

the others were patted-down but not restrained or otherwise secured. Id. The officer conducted a search of the vehicle and located a handgun that belong to Goodwin-Bey in the locked glove compartment. Id. Goodwin-Bey moved to suppress the evidence from the search, arguing the search incident to the arrest of one of the occupants was impermissible under Gant. Goodwin-Bey, 584 F.3d at 1118-1119. Recognizing that, while the other "occupants were outside of the vehicle at the time of the search, but absent an arrest, . . . would have been free to reenter the vehicle and pose a danger to the officers," we held "that a reasonably prudent officer on the scene would be warranted in believing that Goodwin-Bey and his unsecured passengers were dangerous and might access the vehicle to gain immediate control of weapons." Id. at 1120-21 (quotations omitted). We held the search was valid either as a search incident to arrest under Gant or as a matter of safety for the officers under Long. Goodwin-Bey, 584 F.3d at 1121.

Davis and Goodwin-Bey control our decision here. Even assuming that Salamasina had been secured by the arresting officers, Lata was not secured. Rather, Lata repeatedly entered and exited the vehicle to tend to her children, she spoke to Salamasina in a foreign language despite officers' directions to not communicate with Salamasina, and she attempted to close the garage door after officers instructed her to keep the door open. An objective officer considering these facts, in conjunction with the fact that officers had just executed an arrest warrant on Lata's fiancé on drug charges, would be warranted in conducting a search of the vehicle incident to Salamasina's arrest under Gant's officer-safety consideration. We note that, while certain facts of this case such as ratio of officers to vehicle occupants, are not comparable to Davis or Goodwin-Bey, here Lata was repeatedly entering and exiting the vehicle, whereas in Davis and Goodwin-Bey the unsecured individuals were merely in the vicinity of the vehicle. Furthermore, even if Gant's search-incident-to-arrest exception did not apply, the search would have been warranted under Long's reasonable suspicion of dangerousness exception. See Long, 463 U.S. at 1049.

In addition to these officer safety concerns, Lata's actions–attempting to close the garage, opening the car doors, and speaking to Salamasina in a foreign language–suggest an attempt by her to hide potential evidence from officers. Thus, the officers would be justified in conducting the warrantless search of the vehicle to "prevent [the] concealment or destruction" of evidence. See Chimel v. California, 395 U.S. 752, 763 (1969); see also Goodwin-Bey, 584 F.3d at 1120 n.5 ("Neither Chimel nor Gant require both safety and evidentiary concerns to exist to justify a search incident to arrest. Either concern standing alone may trigger the exception to the warrant requirement."). Accordingly, we reject appellants' argument that Detective Gietzen's warrantless search of the vehicle was unconstitutional.

B.

Salamasina also challenges the search warrant application, claiming that there was no probable cause for issuance of the warrant because: (1) the information provided in the search warrant about his drug activities was stale because it was five to six months old, (2) the drug activities referenced in the search warrant application occurred in Texas, not Missouri, (3) officers had no evidence of drugs or drug activity at Salamasina's residence in Missouri, and (4) officers did not locate any narcotics on Salamasina's person or in his vehicle, despite a canine's false alert to the presence of drugs.

"To be valid under the Fourth Amendment, a search warrant must be supported by a showing of probable cause." United States v. Summage, 481 F.3d 1075, 1077 (8th Cir. 2007), cert. denied, 552 U.S. 1104 (2008). "Whether probable cause exists depends upon the totality of the circumstances, but it requires a showing of facts sufficient to create a fair probability that evidence of a crime will be found in the place to be searched." United States v. Gabrio, 295 F.3d 880, 882-83 (8th Cir. 2002) (quotation and citations omitted). Judges "may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a

warrant." United States v. Thompson, 210 F.3d 855, 860 (8th Cir. 2000). Though the issue is reviewed de novo, we accord great deference to the issuing judge's determination that Detective Gietzen's affidavit established probable cause. See United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005).

After considering the totality of the circumstances surrounding the issuance of the search warrant, we agree with the district court's determination that the magistrate who issued the search warrant had a substantial basis for concluding probable cause existed. Although the information about Salamasina's drug activities in Texas was months old, information gleaned during the execution of the arrest warrant buttressed the application for a search warrant. Not only did officers have information connecting Salamasina to the distribution of significant quantities of cocaine and marijuana, but officers located a six-year supply of inositol powder, a known agent for use in cutting cocaine, and acetone, a chemical that is combined with cocaine and inositol powder to give the mixture a more authentic cocaine smell, in Salamasina's vehicle. In addition to these findings, the drug canine alerted to the apparent recent presence of narcotics in the vehicle. Also, the affidavit contained a description of Salamasina and Lata's activities during the arrest, including Lata's attempt to close the garage door and Salamasina's shouting to Lata in a foreign language after being advised to remain quiet for officer safety purposes. The totality of these circumstances established probable cause to conclude that narcotics or evidence of Salamasina's illegal drug activities would be found in his home.

III.

Accordingly, we affirm the district court's denial of appellants' joint motion to suppress.

_____