**FOR PUBLICATION**



ATTORNEY FOR APPELLANT:

**MATTHEW D. ANGLEMEYER**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHRISTOPHER STARK, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1104-CR-152 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Rebekah Pierson-Treacy, Judge
Cause No. 49F19-1010-CM-76319

**January 31, 2012**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

In this interlocutory appeal, Christopher Stark appeals the denial of his motion to suppress a handgun. We affirm.

## Issue

Stark raises two issues, which we consolidate and restate as whether the search of Stark's coat after his arrest violated the Fourth Amendment of the United States Constitution or Article 1, Section 11 of the Indiana Constitution.

## Facts

On October 3, 2010, Officer Ronald Shockey, a reserve officer with the Lawrence Police Department, passed a car parked on Englewood Drive. The car had four occupants, was not running, did not have any lights on, and was in a high crime area. Officer Shockey approached the vehicle and asked the occupants for identification. Stark was sitting in the right rear passenger seat. Stark appeared to slide something under his coat, which was on his lap. Then he pulled his hand out from under the coat, and placed his hand on top of his coat. Stark reached into his pocket to get his identification card while his other hand remained on top of the coat. Stark was holding his jacket "extremely still." Tr. p. 19.

Officer Shockey approached Stark's door, and Stark switched hands to give Officer Shockey his identification card. Stark's identification card showed that he was not yet twenty-one years old. Officer Shockey also saw a plastic cup on the floor near Stark's feet, and Stark admitted that the cup contained alcohol. Officer Shockey noticed that Stark had bloodshot eyes and smelled of alcohol. At that point, Officer Shockey had

Stark get out of the vehicle, but Stark slid the jacket off of his lap and left his jacket in the vehicle. Stark was then arrested for public intoxication and possession of alcohol by a minor and handcuffed. The other three occupants remained in the car. During the arrest, Stark and Officer Shockey were next to the vehicle with Stark between Officer Shockey and the vehicle. Officer Shockey retrieved Stark's jacket from the vehicle and found a loaded semi-automatic handgun. Officer Shockey learned that Stark did not have a firearms permit and that the handgun had been reported as stolen.

The State charged Stark with carrying a firearm without a license as a Class A misdemeanor. Stark filed a motion to suppress the handgun, arguing in part that the search of his jacket was improper under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Stark relied on the United States Supreme Court's opinion in Arizona v. Gant, 556 U.S. 332, 129 S. Ct. 1710 (2009). After a hearing, the trial court denied Stark's motion to suppress, but the trial court certified the order for interlocutory appeal. This court accepted jurisdiction of the interlocutory appeal pursuant to Indiana Appellate Rule 14(B)(3).

### Analysis

Stark argues that the search of his coat after his arrest violated the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Our standard of review for the denial of a motion to suppress evidence is similar to other sufficiency issues. Jackson v. State, 785 N.E.2d 615, 618 (Ind. Ct. App. 2003), trans. denied. We determine whether substantial evidence of probative value exists to support the denial of the motion. Id. We do not reweigh the evidence, and we

3

consider conflicting evidence that is most favorable to the trial court's ruling. Id. However, the review of a denial of a motion to suppress is different from other sufficiency matters in that we must also consider uncontested evidence that is favorable to the defendant. Id. We review de novo a ruling on the constitutionality of a search or seizure, but we give deference to a trial court's determination of the facts, which will not be overturned unless clearly erroneous. Campos v. State, 885 N.E.2d 590, 596 (Ind. 2008).

## I. Fourth Amendment

Stark contends that the warrantless search of the vehicle violated the Fourth Amendment to the United States Constitution, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Unless one of several established exceptions applies, law enforcement officers must obtain a warrant based on probable cause before executing a search or a seizure. State v. Hobbs, 933 N.E.2d 1281, 1284 (Ind. 2010).

One such exception is the search incident to arrest.[1] This exception to the warrant requirement was articulated in Chimel v. California, 395 U.S. 752, 763, 89 S. Ct. 2034, 2040 (1969), where the Court held that a search incident to arrest may include "the

---

[1] The State also argues that the search was proper under the automobile exception because Officer Shockey had probable cause to believe the vehicle contained evidence of a crime. However, the State did not make this argument to the trial court, and we will not consider it on appeal.

4

arrestee's person and the area 'within his immediate control' – construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." Then, in New York v. Belton, 453 U.S. 454, 455-57, 101 S. Ct. 2860, 2861-62 (1981), the Court was asked to consider whether the search incident to arrest exception applied to permit an officer to search a jacket found inside an automobile after the automobile's four occupants were arrested. The Court held that when an officer lawfully arrests "the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile" and any containers therein. Belton, 453 U.S. at 460, 101 S. Ct. at 2864.

Recently, in Arizona v. Gant, 556 U.S. 332, 129 S. Ct. 1710 (2009), the Court considered the search incident to arrest exception where the defendant had been arrested, handcuffed, and placed in the back of a patrol car and officers searched his car, finding a gun and cocaine. There were no passengers in his car, and bystanders had also been arrested and placed in police cars. The Court noted that the search incident to arrest exception "derives from interests in officer safety and evidence preservation. . . ." Gant, 556 U.S. at 332, 129 S. Ct. at 1716 (citing in part Chimel, 395 U.S. at 763, 89 S. Ct. at 2040). The Court clarified that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Gant, 556 U.S. at 332, 129 S. Ct. at 1723. "When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement

5

applies." Id. at 332, 129 S. Ct. at 1723-24. The Court concluded that the search incident to arrest exception did not justify the search of the defendant's vehicle.

Here, the State contends that Stark was "within reaching distance of the passenger compartment" and was "relatively unsecured," but we do not find this argument convincing. Appellee's Br. p. 6. At the time of the search, Stark was out of the car and was handcuffed. However, the circumstances here are different than the circumstances in Gant. In Gant, the defendant was alone in his car when he was arrested, and the vehicle was searched after he and some bystanders were handcuffed and placed in police cars. Here, although Stark was removed from the vehicle and handcuffed, three other unsecured persons remained in the vehicle. Indiana courts have not encountered a situation like this since the United States Supreme Court's holding in Gant, but other courts have.

In United States v. Davis, 569 F.3d 813 (8th Cir. 2009), an officer stopped a vehicle for speeding and smelled marijuana during the traffic stop. The officer conducted a pat-down search of the defendant and found marijuana, resulting in the defendant's arrest and placement in a patrol car. The officer then removed three passengers from the car and left them unsecured while he searched the vehicle. During the search, he discovered a weapon and opened bottles of alcohol. The defendant sought to suppress the weapon based on Gant.

In discussing Gant, the Eighth Circuit noted that "police may validly search an automobile incident to an "arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the [sic] of the search or it is reasonable to believe

6

the vehicle contains evidence of the offense of arrest." Davis, 569 F.3d at 817 (quoting Gant, 556 U.S. at 332, 129 S. Ct. at 1723). Focusing on the first portion of the Gant test, the court noted that "[t]he within-reach requirement places the search-incident-to-arrest exception within the boundaries set by the two underlying rationales for the rule set forth in Chimel v. California, 395 U.S. 752, 89 S. Ct. 2034, 23 L.Ed.2d 685 (1969) - ensuring officer safety and protecting perishable evidence." Id. at 816. The court concluded that the search was permissible because the passengers were "not in secure custody and outnumbered the two officers at the scene." Id. at 817. Those facts, the court concluded, were "textbook examples of '[t]he safety and evidentiary justifications underlying Chimel's reaching-distance rule . . . .'" Id. (quoting Gant, 556 U.S. at 332, 129 S. Ct. at 1714)).

Then, in United States v. Goodwin-Bey, 584 F.3d 1117 (8th Cir. 2009), cert. denied, the Eighth Circuit again considered Gant and the search incident to arrest exception. There, an officer stopped a vehicle for a traffic violation, and the vehicle was driven by the defendant and had three other passengers. The officer received a report that the occupants of the vehicle had earlier displayed a firearm. After a passenger was arrested for an outstanding warrant, officers conducted pat-down searches of the other occupants and searched the vehicle. The officers found a gun inside the locked glove box, and the defendant was arrested on weapons charges.

He argued that the gun should be suppressed because the search incident to arrest was impermissible under Gant. The government argued that because the defendant and the other passengers "were not secured, unlike the bystanders in Gant, officer safety

7

concerns justified the search." Goodwin-Bey, 584 F.3d at 1119. Relying on Davis, the Eight Circuit held that the "earlier incident report, along with the number of the vehicle's occupants, sufficiently implicated officer safety concerns to justify a search incident to arrest under Belton." Id. at 1120.

Finally, in Commonwealth v. Young, 940 N.E.2d 885 (Mass. App. Ct. 2011), review denied, the Massachusetts Appeals Court also considered the search incident to arrest exception after Gant. There, after responding to a report of gunshots, officers initiated a traffic stop on a vehicle for a traffic violation. They immediately noticed illegal drugs protruding from the driver's shirt pocket and arrested him. The officers then returned to the vehicle and ordered the two passengers, including the defendant, out of the car. The defendant acted strangely, but he ultimately got out of the car, and the officers found a handgun in his waistband.

The defendant argued that the officers "lacked a basis to order him from the vehicle because the discovery of drugs on [the driver's] person did not justify a search of the passengers or of the vehicle itself for drugs." Young, 940 N.E.2d at 887. Noting that, at the time the defendant was ordered to exit the vehicle, there was no danger from the driver because he was already restrained and handcuffed inside a police vehicle, the court stated: "Had [the driver] been the sole occupant of the vehicle, we agree with the defendant that under the Fourth Amendment and art. 14 a vehicle search incident to [the driver's] arrest would not be justified in order to prevent his accessing a weapon or destroying evidence." Id. at 889. However, unlike Gant, who was alone in the vehicle, the driver in Young was accompanied by two passengers who remained in the vehicle.

8

Also unlike Gant, who was arrested for driving with a suspended license, "an offense for which police could not expect to find evidence in the passenger compartment of Gant's car," the driver in Young was arrested for a drug offense, an offense for which the police could reasonably expect to find such evidence in the passenger compartment. Id. "The same concern regarding the hiding or destruction of evidence that authorizes a vehicle search incident to arrest when the arrestee is not secured also exists when others with whom the arrestee is traveling remain unsecured inside the vehicle." Id. at 890. "Police action literally has to be 'now or never' to preserve evidence of the crime of arrest that remains inside the vehicle and in proximity to the vehicle's unsecured occupants." Id. The passengers' "presence in the vehicle rendered them able to destroy or conceal evidence inside the passenger compartment relevant to the crime for which [the driver] was arrested . . . ." Id. As a result, the court concluded that the police properly ordered the defendant to get out of the vehicle so they could conduct a vehicle search incident to the driver's arrest.

Davis, Goodwin-Bey, and Young indicate that, where unrestrained passengers remain in a vehicle, a search of the vehicle incident to a defendant's arrest is permissible to alleviate officer safety concerns and to prevent the destruction of evidence. We find this analysis persuasive. The Court in Gant emphasized the officer safety basis for the search incident to arrest exception. Gant, 556 U.S. at 332, 129 S. Ct. at 1716. The three passengers here were unsecured during Officer Shockey's arrest of Stark, Stark had behaved suspiciously regarding his jacket, and they were in a high crime area. An objective officer considering these facts would have been warranted in conducting a

9

search of the vehicle incident to Stark's arrest under <u>Gant</u>'s officer safety considerations.[2] See <u>United States v. Salamasina</u>, 615 F.3d 925, 930 (8th Cir. 2010) (holding that, where the defendant's fiancée repeatedly entered and exited the vehicle, spoke to the defendant in a foreign language, and attempted to close the garage door, "[a]n objective officer considering these facts, in conjunction with the fact that officers had just executed an arrest warrant on [the fiancée] on drug charges, would be warranted in conducting a search of the vehicle incident to [the defendant's] arrest under <u>Gant</u>'s officer-safety consideration"). The search of the vehicle incident to Stark's arrest was permissible under <u>Gant</u>, and the trial court properly denied Stark's motion to suppress.

## II. *Indiana Constitution*

Stark also claims that the warrantless search violated Article 1, Section 11 of the Indiana Constitution. The text of this provision of the Indiana Constitution is identical to the Fourth Amendment, but the two have been given somewhat different interpretations. <u>Hobbs</u>, 933 N.E.2d at 1287. Conformity of a search to the Indiana Constitution turns on an evaluation of the "reasonableness" of the conduct of the law enforcement officers, not on the expectation of privacy commonly associated with Fourth Amendment analysis. <u>Id.</u> Relevant considerations in evaluating reasonableness of a search under all the circumstances include the degree to which the search or seizure disrupts the suspect's normal activities, and those facts and observations that support the officer's decision to initiate the search or seizure. <u>Id.</u> Although there may well be other relevant

---

[2] Stark argues that Officer Shockey was not suspicious of the passengers and only took the coat so that Stark would have it later. However, based on <u>Salamasina</u>, 615 F.3d at 930, we look to the objective facts, not Officer Shockey's subjective thoughts.

10

considerations under the circumstances, the reasonableness of a search or seizure generally turns on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs. Litchfield v. State, 824 N.E.2d 356, 361 (Ind. 2005).

Stark argues that, although a violation of Indiana's alcohol laws had occurred, the degree of the officer's intrusion was "extremely high" because the officer entered the vehicle and searched Stark's coat. Appellant's Br. p. 9. Stark also argues that there was no evidence to justify the search based on law enforcement needs.

It is clear that a violation had occurred because Stark was arrested public intoxication and possession of alcohol by a minor. Despite Stark's argument, we conclude that the degree of intrusion was minimal here. Stark had already been arrested, and Officer Shockey merely retrieved Stark's coat from the vehicle. Although Stark attempts to minimize the law enforcement needs here, officer safety concerns existed. The three passengers were unsecured during Officer Shockey's arrest of Stark, Stark had behaved suspiciously regarding his jacket, and they were in a high crime area. Under these circumstances, we conclude that Officer Shockey's search did not violate Article 1, Section 11 of the Indiana Constitution. The trial court properly denied Stark's motion to suppress.

## Conclusion

The search did not violate the Fourth Amendment or the Indiana Constitution. The trial court properly denied Stark's motion to suppress. We affirm.

Affirmed.

KIRSCH, J., and BRADFORD, J., concur.