# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 13 2017, 10:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Yvette M. LaPlante
Keating & LaPlante, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Terry McNary, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | March 13, 2017 <br><br> Court of Appeals Case No. 82A04-1607-CR-1733 <br><br> Interlocutory Appeal from the Vanderburgh Circuit Court <br><br> The Honorable Kelli E. Fink, Magistrate <br><br> Trial Court Cause No. 82C01-1603-F3-1640 |

**Crone, Judge.**

# Case Summary

In this interlocutory appeal, Terry McNary challenges the denial of his motion to suppress certain evidence from his trial on charges of level 3 felony methamphetamine possession, level 6 felony cocaine possession, and level 6 felony narcotics possession. He specifically asserts that the challenged evidence was obtained pursuant to an unlawful search of his vehicle and certain containers found therein during a traffic stop. We affirm.

# Facts and Procedural History

One evening in March 2016, Evansville Police Department Sergeant Stephen Kleeman was patrolling city streets for seatbelt enforcement and aggressive driving. He observed a vehicle with a broken taillight and watched as the driver turned directly in front of a vehicle on his right and made an immediate right turn into a movie theater parking lot. The sergeant activated his lights and initiated a traffic stop for aggressive driving.

When Sergeant Kleeman approached the vehicle, he noticed that there were four passengers in addition to the driver, McNary. When the sergeant asked for McNary's driver's license, he indicated that he did not have one. He gave the sergeant his name and birthdate, and the sergeant returned to his patrol vehicle to enter the information into his computer. The National Crime Information Center ("NCIC") database indicated that McNary had an active warrant in Clay County, Indiana, for failure to appear on charges of possession of a handgun without a license and marijuana possession. The NCIC entry

indicated that McNary was to be considered "armed and dangerous." Tr. at 6-7. The sergeant also learned that McNary's driver's license had been suspended in Kentucky.

[4] Sergeant Kleeman became concerned for his safety and called for backup. When backup officers arrived and were apprised of the situation, they removed McNary from his vehicle,[1] handcuffed him, and placed him in Sergeant Kleeman's patrol vehicle. Sergeant Kleeman informed McNary that he had discovered his active warrant in Clay County on weapons and drug charges and told him that he had notified law enforcement there concerning possible extradition. He told McNary that he would be held until they got a response and that if Clay County did not seek extradition, he would be released. According to the sergeant, he did not Mirandize McNary at that time, and the only conversation he had with McNary was "whether he was going to be going to jail for the NCIC hit." *Id.* at 19-20.

[5] Meanwhile, McNary's adult female passenger ("Girlfriend") remained in the front seat of his vehicle, and his three juvenile passengers remained in the back seat. Officer Jacklyn Smith kept watch over the passengers and found that the tinted windows and dark, misty weather conditions made it difficult to observe their movements. She opened the passenger door, and when she saw a backseat

---

[1] We refer to the vehicle that McNary was driving as "his vehicle" for purposes of distinguishing it from the police vehicles present at the scene. The registered owner of the vehicle was the father of one of the juvenile passengers. On appeal, the State does not argue that McNary lacks standing to complain about the search of the vehicle.

passenger moving around or reaching for something, she directed the passengers to "keep their hands on their laps." *Id*. at 22. She removed the passengers from the vehicle and immediately conducted a search of the areas of the vehicle within the driver's "wingspan." *Id*. at 22-23, 27. On the floorboard right behind the front passenger's seat, she discovered a zippered pouch/coin-purse which, in her experience, resembled those sometimes used to store drugs. She opened the pouch and found a small tin containing what appeared to be narcotics (and later was determined to be methamphetamine, cocaine, and hydrocodone). Officer Smith approached Sergeant Kleeman and informed him that she had discovered the drugs. The sergeant told Officer Smith that he would ask McNary and Girlfriend if either one would claim the pouch of drugs, and if not, he would arrest them both. McNary apparently overheard the officers' conversation and "stated that it was not her dope and that it was all his." *Id*. at 23. Shortly thereafter, Clay County law enforcement responded that it did not wish to pursue extradition of McNary at that time.

[6] The State charged McNary with level 3 felony methamphetamine possession, level 6 felony cocaine possession, and level 6 felony narcotics possession. Claiming that he had been subjected to an unlawful search and seizure, McNary filed a motion to suppress the evidence recovered from his vehicle.[2] The trial court held a suppression hearing, and the parties submitted briefing

---

[2] As part of his motion to suppress, McNary also challenged the admissibility of certain inculpatory statements that he made to officers at the scene. However, he does not argue this issue on appeal. Appellant's App. at 11-12. As such, we limit our discussion to the search of his vehicle and its contents.

after the hearing. The trial court issued an order with findings of fact denying McNary's motion.

Upon McNary's request, the trial court certified the order for interlocutory appeal, and we accepted jurisdiction. Additional facts will be provided as necessary.

# Discussion and Decision

McNary maintains that the trial court erred in denying his motion to suppress evidence obtained during a warrantless search of his vehicle. Our standard of review for the denial of a motion to suppress evidence is similar to that which we apply to other sufficiency issues. *Stark v. State*, 960 N.E.2d 887, 888 (Ind. Ct. App. 2012), *trans. denied*. In determining whether substantial evidence of probative value exists to support the denial of the motion, we do not reweigh evidence but instead consider the conflicting evidence most favorable to the trial court's ruling. *Id*. However, in contrast to our review of other sufficiency matters, we also consider any uncontested evidence favorable to the appellant. *Id*. at 888-89. We review de novo a ruling on the constitutionality of a search or seizure but give deference to a trial court's factual determinations and will not overturn them unless they are clearly erroneous. *Id*. at 889. Because McNary alleges violations of both the Fourth Amendment to the U.S. Constitution and Article 1, Section 11 of the Indiana Constitution, we review his claims using the independent analyses of each. *Wilford v. State*, 50 N.E.3d 371, 374 (Ind. 2016).

# Section 1 – The search of McNary's vehicle did not violate the Fourth Amendment's prohibition against unreasonable search and seizure.

McNary submits that the search of his vehicle and the search and seizure of the pouch violated his protections against unreasonable search and seizure found in the Fourth Amendment of the U.S. Constitution, which provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Unless an established exception applies, law enforcement must obtain a warrant based on probable cause before executing a search and seizure. *Stark*, 960 N.E.2d at 889. One such exception is a search incident to arrest. *Id*. In *Chimel v. California*, 395 U.S. 752, 763 (1969), the U.S. Supreme Court held that a search incident to arrest may include the arrestee's person and the area "within his immediate control," meaning the area within reach, "from within which he might gain possession of a weapon or destructible evidence." *Id*. Where the arrestee is the occupant of an automobile, officers may, incident to a lawful arrest, "search the passenger compartment of that automobile" as well as any containers found therein. *New York v. Belton*, 453 U.S. 454, 460 (1981).

However, noting that *Belton* should not be read to give police officers "unbridled discretion to rummage at will amongst a person's private effects,"

the U.S. Supreme Court took a narrower view in *Arizona v. Gant*, 556 U.S. 332, 345 (2009). There, the Court considered circumstances involving an arrest for driving on a suspended license where the arrestee had been removed from his vehicle, handcuffed, and placed in a patrol vehicle prior to the search of his vehicle and concluded, "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id*. at 351. Noting that there were no passengers in Gant's vehicle and that bystanders had likewise been arrested and placed in patrol vehicles, the *Gant* court reasoned that the typical justifications of officer safety and evidence preservation were absent, thus rendering the ensuing search of Gant's vehicle unreasonable under the Fourth Amendment. *Id*. at 347-48.

[11] In *Stark*, 960 N.E.2d at 891-92, another panel of this Court affirmed the denial of the defendant's motion to suppress a handgun found inside a jacket that he had left inside his vehicle. There, a police officer patrolling a high crime area noticed a vehicle parked along the road with four occupants, no lights on, and no engine running. *Id*. at 888. When the officer approached and asked each occupant for identification, Stark, a backseat passenger, appeared to slide an object under his coat, which he held firmly in his lap. *Id*. The officer noticed that Stark appeared intoxicated and that there was an open plastic cup near his feet. Stark admitted that the cup contained alcohol, and the officer ordered him out of the vehicle. *Id*. Stark slid his jacket off his lap and left it inside the

vehicle. He was handcuffed and arrested for public intoxication and alcohol possession by a minor. Three other occupants remained in the vehicle, and the officer reached inside and retrieved Stark's jacket, in which he discovered a loaded semi-automatic handgun for which Stark had no permit and which had been reported as stolen. *Id*. The State charged Stark with carrying a firearm without a license.

[12] Stark appealed the trial court's denial of his motion to suppress the handgun as the product of an unlawful search. The *Stark* court held that the search of the defendant's jacket was permissible as a search incident to arrest under *Gant*. *Id*. As in *Gant*, police had removed the arrestee from his vehicle and handcuffed him. *Id*. at 888. During his arrest, Stark stood outside between the arresting officer and the vehicle. *Id*. The *Stark* court found *Gant* factually distinguishable, as there had been no occupants remaining in Gant's vehicle. In contrast, the *Stark* court concluded that officer safety was implicated by an objective consideration of the presence of three unsecured occupants inside Stark's vehicle, Stark's suspicious behavior concerning his jacket, and the fact that the arrest occurred in a high-crime area. *Id*. at 891-92.

[13] As a threshold matter, we address McNary's argument that the exception for search incident to arrest does not apply because he was not under arrest at the time of the search. He predicates this argument on Sergeant Kleeman's statement that he was either going to go to jail on the Clay County warrant or be released. "Arrest is the taking of a person into custody, that he may be held to answer for a crime." Ind. Code § 35-33-1-5. This occurs when an officer

interrupts the accused's freedom and restricts his liberty of movement. *Merchant v. State*, 926 N.E.2d 1058, 1064 (Ind. Ct. App. 2010), *trans. denied*. We evaluate whether a person is in custody based on objective circumstances, not upon the subjective views of officers. *Crocker v. State*, 989 N.E.2d 812, 818 (Ind. Ct. App. 2013), *trans. denied*. "[E]ven when a police officer does not tell a defendant that he is under arrest before a search, that fact dos not invalidate a search incident to an arrest as long as there is probable cause to make an arrest." *Merchant*, 926 N.E.2d at 1064.

[14] Here, McNary had been removed from the vehicle, handcuffed, and placed in custody in the back of the sergeant's patrol vehicle pending a response from Clay County concerning extradition on his active warrant. He was not free to leave. Notwithstanding Sergeant Kleeman's statement that McNary would either be going to jail on the warrant or released, the sergeant's subjective considerations are irrelevant, and probable cause existed to arrest McNary for misdemeanor driving on a suspended license and cite him for aggressive driving regardless of the response from Clay County or the results of the ensuing search. McNary was under arrest.

[15] Concerning the wingspan search incident to arrest, we find that officer safety was implicated not only by the NCIC warning that McNary was to be considered armed and dangerous but also by the presence and conduct of the unsecured passengers. Officer Smith testified that when she observed one of the backseat passengers reaching for something, she ordered all the passengers to keep their hands on their laps. She decided to remove them from the vehicle

just before she conducted her wingspan search. Even then, the passengers stood unsecured immediately outside the vehicle. Under these circumstances, we conclude that an objective officer would have been warranted in conducting a wingspan search of the vehicle incident to arrest.

[16] As for Officer Smith's decision to search *inside* the pouch, McNary observes that the container was too small to contain a firearm and therefore did not present an officer safety concern. He also submits that it was objectively unreasonable for Officer Smith to believe that the container held "evidence of the offense of arrest." *Gant*, 556 U.S. at 351. In this vein, he claims that the offense of arrest was "failure to appear," and therefore only such items as a dated docket entry or a transcript from the hearing for which he had failed to appear would qualify as evidence of the offense. We find this reasoning oversimplified and believe that an objective evaluation of reasonableness must include consideration of the underlying charges for which the defendant has failed to appear – here, weapons and drug offenses. In other words, law enforcement's approach to a detainee with an active warrant for failure to appear on weapons or drug charges could reasonably be expected to differ from its approach to one whose warrant is for failure to appear on a misdemeanor traffic offense. That being said, nothing in the record indicates the date upon which McNary was arrested on the marijuana charge in Clay County relative to the date of the instant drug offenses. However, police must operate on the facts known at the time, and we believe that a reasonable officer in the same circumstances would have been warranted in checking inside the pouch. Based

on the foregoing, we conclude that the trial court properly denied McNary's motion to suppress on Fourth Amendment grounds.

## Section 2 – The search of McNary's vehicle did not violate the Indiana Constitution's prohibition against unlawful search and seizure.

[17] McNary also maintains that the search and seizure was unlawful under Article 1, Section 11 of the Indiana Constitution. While the text of Article 1, Section 11 is identical to that of the Fourth Amendment, the analyses vary somewhat. *Stark*, 960 N.E.2d at 892. "Conformity of a search to the Indiana Constitution turns on an evaluation of the 'reasonableness' of the conduct of the law enforcement officers, not on the expectation of privacy commonly associated with Fourth Amendment analysis." *Id*. We evaluate the reasonableness of such conduct under "the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005). Although we recognize that there may be other relevant considerations under the circumstances of each case, we evaluate the reasonableness of a search or seizure under the Indiana Constitution by balancing (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs. *Id*.

[18] First, the officers had a high degree of suspicion and knowledge that McNary had violated the law. Sergeant Kleeman observed his aggressive driving in making an immediate turn off the roadway after cutting off another driver.

McNary admitted that he was driving without a license, and computer records showed that his Kentucky license had been suspended. He also had an outstanding warrant on weapons and drug charges and was listed in the NCIC database as "armed and dangerous." Sergeant Kleeman acted on his high degree of concern and knowledge by calling for backup. Officer Smith acted on the information that she was given concerning the danger and, after observing the passengers as best she could in the dark, misty weather, conducted a limited search of the vehicle commensurate with the concerns surrounding McNary. The degree of concern, suspicion, and knowledge weighs in favor of the State.

[19] With respect to the degree of intrusion on McNary's ordinary activities, Officer Smith testified that she merely conducted a wingspan search of the areas of the vehicle within McNary's reach. By that time, McNary had been removed from the vehicle, handcuffed, and placed in a police vehicle because of the Clay County warrant and the information in the NCIC database. As such, his activities were already restricted based on the outstanding warrant. Because darkness, tinted windows, and weather conditions impaired Officer Smith's ability to observe movements by the passengers remaining inside McNary's vehicle, she simply ordered them to stand immediately outside the vehicle. She emphasized that she found the pouch within the parameters of her wingspan search, that she did not search the whole vehicle, and that the pouch was not hidden but was sitting on the floorboard immediately behind the front passenger's seat near the center hump. By the time Sergeant Kleeman received a response from Clay County law enforcement concerning extradition of

McNary on the warrant, Officer Smith had completed her search, discovered the contraband, and reported her findings to the sergeant. This occurred within ten minutes' time.

[20] As for the degree of intrusion attendant to Officer Smith's *opening* the small pouch that she obtained during the wingspan search, our supreme court recently held that a defendant's rights were not violated when police opened a pill container obtained during a patdown search incident to a valid arrest. *Garcia v. State*, 47 N.E.3d 1196, 1205 (Ind. 2016). While we acknowledge that the pouch was obtained during a vehicle search rather than a patdown of McNary, we see no significant difference in the degree of intrusion, especially given the brief time that elapsed and the fact that the wingspan search had been completed before the officers received a response from Clay County concerning the active warrant. As such, the search did not lengthen the duration of McNary's detention. Moreover, we are unpersuaded by McNary's assertion that opening the pouch amounted to an unlawful intrusion because it was too small to contain a firearm. "A search incident to a valid arrest is lawful regardless of what it reveals." *Guilmette v. State*, 14 N.E.3d 38, 42 (Ind. 2014) (quoting *Farrie v. State*, 255 Ind. 681, 683, 266 N.E.2d 212, 214 (1971)). Even so, we remind McNary that while officer safety concerns precipitated the wingspan search for possible weapons, the active warrant concerned both weapons and drug charges. The minimal degree of intrusion weighs in favor of the State.

[21]     Finally, with respect to law enforcement needs, we observe that the most commonly recognized bases for conducting a search incident to arrest include "ensuring that the arrestee is unarmed, preventing the arrestee from bringing contraband into jail, and preventing the destruction of evidence." *Garcia*, 47 N.E.3d at 1202 (quoting *Edmond v. State*, 951 N.E.2d 585, 592 (Ind. Ct. App. 2011)). Here, the need to ensure officer safety was high, as the NCIC database showed that McNary had an active warrant for failure to appear on weapons and drug charges in another county. Concern for officer safety was further heightened by the statement in the NCIC database that McNary was to be considered "armed and dangerous." Officer Smith testified concerning the number of officers at the scene that it was an "officer safety issue with the handgun, we don't take handguns lightly." Tr. at 22. When asked about the wingspan search, she stated, "we were making sure that there was no other weapon in the car." *Id.* at 23. Moreover, the need to prevent destruction or loss of evidence was high, since Girlfriend was a licensed driver and could have driven away. Officer Smith expressed concern because of conditions that impaired her ability to see what McNary's four passengers were doing while still inside the vehicle. She testified that when she opened the passenger's side door and observed movement and reaching by one of the passengers, she first warned the passengers to keep their hands on their laps. Her needs as a law enforcement officer involved not only addressing what the "armed and dangerous" McNary might have attempted to stash within his reach during the initial minutes of the stop but also what one of the passengers might have taken possession of or attempted to stash in the ensuing minutes between the original

stop and the wingspan search.  The passengers remained inside the vehicle for several minutes and were removed just moments before the search.  Even then, the passengers stood unsecured next to the vehicle.  Law enforcement needs of officer safety and evidence preservation weigh in favor of the State.

[22]    In short, police acted lawfully under the totality of the circumstances pursuant to Article 1, Section 11.  As such, we conclude that McNary was not denied his constitutional protections when police seized and searched the pouch containing illegal substances.  Thus, the trial court did not err in denying McNary's motion to suppress.  Accordingly, we affirm.

[23]    Affirmed.


Riley, J., and Altice, J., concur.