## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 16 2019, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Edward A. McGlone
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gary Allen Brownfield,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | August 16, 2019<br><br>Court of Appeals Case No.<br>19A-CR-323<br><br>Appeal from the Vermillion Circuit Court<br><br>The Honorable Robert M. Hall, Special Judge<br><br>Trial Court Cause No.<br>83C01-1804-F6-52 |

**Baker, Judge.**

[1] Gary Brownfield brings this interlocutory appeal of the trial court's order denying his motion to suppress certain evidence, arguing that the pat-down search violated both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Finding no violation, we affirm.

# Facts

[2] On April 25, 2018, Clinton City Police Department Officer Brandon Mahady was patrolling on Main Street in Vermillion County. Officer Mahady had received information from a confidential informant that Brownfield would be entering Vermillion County in a red pickup truck. The informant had told Officer Mahady that Brownfield "was gonna be coming from Terre Haute to Clinton delivering methamphetamine." Tr. Vol. II p. 8.

[3] Using his radar gun, Officer Mahady detected a white cargo van driving by at thirty-five miles per hour in a twenty-mile-per-hour zone. Officer Mahady also noticed that the front windshield had a large crack in it. Officer Mahady then activated his police lights and conducted a traffic stop.

[4] As he approached the vehicle, Officer Mahady came upon a man later identified as Brownfield sitting in the driver's seat. Officer Mahady asked Brownfield for his driver's license and proof of insurance. While Brownfield searched for this, Officer Mahady asked Brownfield where he was going, to which Brownfield replied that he was going to the informant's house, pointing

at a house down the street. After reviewing Brownfield's information, Officer Mahady recognized Brownfield's name as the one matching the information provided by the informant and noticed that Brownfield appeared "nervous." *Id.* at 15. Officer Mahady also asked Brownfield if he had any weapons on him, to which Brownfield said that he did not have a gun on him but that "there was a knife in the van." *Id.*

[5] Fearing that Brownfield might pose a risk to his safety, Officer Mahady asked Brownfield to exit the vehicle so that he could conduct a pat-down search to check for weapons, to which Brownfield replied "okay." Defendant's Ex. 1 at 03:38:13.[1] To confirm just what "okay" meant, Officer Mahady asked the question again, and Brownfield responded by saying "yes." *Id.* at 03:38:22. Brownfield then exited his vehicle, turned around, and put his hands on the vehicle without any prompting. As Officer Mahady was patting Brownfield down, Officer Mahady wanted to search Brownfield's pockets and asked, "You don't care if I check?" to which Brownfield responded "no." *Id.* at 03:38:46-03:38:49; *see also* Tr. Vol. II p. 31. Officer Mahady found a knife and a baggie of a substance that was later determined to be methamphetamine in Brownfield's pockets. Officer Mahady then read Brownfield his *Miranda*[2] rights and had

---

[1] This exhibit represents audio recorded from Officer Mahady's body camera during the traffic stop.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Brownfield perform three field sobriety tests, all of which he failed. Brownfield was then arrested.

[6] On April 27, 2018, the State charged Brownfield with one count of Level 6 felony possession of methamphetamine and one count of Class C misdemeanor operating while intoxicated. On August 14, 2018, Brownfield filed a motion to suppress evidence obtained from the pat-down, arguing that the search violated both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Following a November 16, 2018, hearing, the trial court took the matter under advisement. Then, on November 28, 2018, the trial court denied Brownfield's motion to suppress. Brownfield now brings this interlocutory appeal.

# Discussion and Decision

[7] Brownfield's sole argument on appeal is that the trial court erred when it denied his motion to suppress certain evidence because the search violated both the United States and Indiana Constitutions. Specifically, Brownfield argues that he did not consent to Officer Mahady's request to conduct a pat-down search and that the search was not reasonable under a totality of the circumstances.

[8] As a general matter, the Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. Article 1, Section 11 of the Indiana Constitution contains nearly identical language and says that "[t]he right of the people to be secure in their persons, houses, papers, and

effects, against unreasonable search or seizure, shall not be violated[.]"
Evidence that is the product of an unlawful search is inadmissible under both
the Fourth Amendment to the United States Constitution and Article 1, Section
11 of the Indiana Constitution. *Hill v. State*, 956 N.E.2d 174, 177 (Ind. Ct. App.
2011) (holding that evidence obtained from an illegal search is "fruit of the
poisonous tree," and therefore, inadmissible in a court of law).

[9]     Brownfield is appealing from a negative judgment, so he has the burden of
showing that the trial court's ruling on the suppression motion was contrary to
law. *State v. Brown*, 70 N.E.3d 331, 335 (Ind. 2017). We will reverse this
negative judgment only if the evidence points to a conclusion opposite that
reached by the trial court. *State v. Moriarity*, 832 N.E.2d 555, 557-58 (Ind. Ct.
App. 2005). We review the trial court's conclusions of law de novo, giving no
weight to the legal analysis below. *Sanders v. State*, 989 N.E.2d 332, 334 (Ind.
2013).

# I. Fourth Amendment

[10]    The United States Supreme Court has established that a police officer may
conduct a pat-down search of a driver after a valid traffic stop if the officer
reasonably suspects that the driver is armed and dangerous. *Pennsylvania v.
Mimms*, 434 U.S. 106, 111-12 (1977). "[T]here must exist articulable facts to
support an officer's reasonable belief that the particular individual is armed and
dangerous." *Patterson v. State*, 958 N.E.2d 478, 486 (Ind. Ct. App. 2011). To
determine whether an officer acted reasonably, we consider the specific,

reasonable inferences that the officer is entitled to draw from the facts in light of his experience. *Id.*

[11]    The record shows that Officer Mahady conducted a valid traffic stop after detecting that Brownfield was driving almost fifteen miles per hour over the speed limit. Officer Mahady then asked Brownfield for his driver's license and insurance information. After learning that this was the same Brownfield whom Officer Mahady suspected of trafficking in narcotics, Officer Mahady asked Brownfield if he had any weapons. Once Brownfield informed Officer Mahady that he had a knife, Officer Mahady testified to the following:

> Based off of—after we—[the informant]—came up in our conversation I could tell he was very nervous with, you know, there's a knife—he stated to me there was a knife *that could potentially be a threat to my safety* I had him step out of the van, conducted—to conduct a pat down for weapons.

Tr. Vol. II p. 15 (emphasis added).

[12]    From this information, we find that Officer Mahady had a reasonable belief that Brownfield was armed and dangerous, thereby warranting a pat-down search to check for weapons. Not only did a "nervous" Brownfield explicitly inform Officer Mahady that he had a knife, but Officer Mahady also had prior knowledge that this was the Brownfield that had been trafficking in illegal narcotics. *See Bell v. State*, 13 N.E.3d 543, 545-46 (Ind. Ct. App. 2014) (finding that an officer may conduct a pat-down if a suspect displays suspicious behavior and the arresting officer has concrete knowledge that the suspect is transporting drugs). The specific facts and circumstances that Officer Mahady drew on to

conclude that his life was in danger independently support the trial court's conclusion that there was no Fourth Amendment violation.

[13] Consequently, Brownfield cannot claim a constitutional violation, and we need not consider any argument about whether Brownfield consented to the pat-down search.

# II. Article 1, Section 11

[14] Searches by law enforcement require a different review under Article 1, Section 11 of the Indiana Constitution:

> Conformity of a search to the Indiana Constitution turns on an evaluation of the "reasonableness" of the conduit of the law enforcement officers, not on the expectation of privacy commonly associated with Fourth Amendment analysis. Relevant considerations in evaluating reasonableness of a search under all the circumstances include the degree to which the search or seizure disrupts the suspect's normal activities, and those facts and observations that support the officer's decision to initiate the search or seizure . . . [T]he reasonableness of a search or seizure generally turns on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.

*Stark v. State*, 960 N.E.2d 887, 892 (Ind. Ct. App. 2012) (internal citations omitted). With this analysis in mind, we find that Officer Mahady's pat-down search of Brownfield did not violate Article 1, Section 11 of the Indiana

Constitution, and therefore, any evidence obtained as a result of the lawful search is admissible.[3]

[15] First, Officer Mahady had a high degree of concern that some law had been violated. He had received information from a confidential informant that Brownfield was driving to Clinton to deal methamphetamine. Even though Brownfield was driving a white cargo van and not a red pickup truck, Officer Mahady quickly figured out that the driver was, in fact, Brownfield. Furthermore, Brownfield was driving fifteen miles per hour over the speed limit, his windshield was cracked, and Officer Mahady testified that Brownfield appeared nervous. All of this information in the aggregate would create a high degree of suspicion that some criminal activity was afoot.

[16] Next, the search of Brownfield and the seizure of his knife and methamphetamine imposed minimal intrusion into Brownfield's ordinary activities. It is clear that Officer Mahady had the authority to conduct a *Terry*[4] stop of Brownfield's vehicle after detecting the speeding violation and noticing a large crack in his windshield. So, the subsequent pat-down did not create an excessive intrusion or impede Brownfield's tasks. It is not logical to say that

---

[3] Additionally, Brownfield argues that he was entitled to the presence and advice of counsel pursuant to *Pirtle v. State*, 323 N.E.2d 634 (Ind. 1975). However, this is the first time Brownfield is raising this argument, and at the trial court level, Brownfield only argued that consent was not given and that the pat-down search was unreasonable. Therefore, Brownfield has waived this argument for appellate review. *See Marshall v. State*, 621 N.E.2d 308, 314 (Ind. 1993). We note briefly, however, that even if the argument had been timely raised, it would not have changed the result because Brownfield was not in custody at the time he consented to the search. *See Campos v. State*, 885 N.E.2d 590, 601-02 (Ind. 2008).

[4] *Terry v. Ohio*, 392 U.S. 1 (1968).

Officer Mahady's actions unreasonably intruded into Brownfield's ordinary activities when Brownfield had already been stopped for a legitimate reason. Plus, Brownfield willingly answered all Officer Mahady's questions, exited his vehicle, and placed his hands on his vehicle without prompting. Furthermore, Officer Mahady did not conduct a search of Brownfield's entire body or of his most personal possessions.

[17] Finally, Officer Mahady testified that he had felt that the traffic stop could have turned into a precarious situation. He had been informed that Brownfield was transporting illegal narcotics, and Brownfield himself told Officer Mahady that he had a knife. So, it was not unreasonable for Officer Mahady to believe that Brownfield was potentially armed and dangerous. Under these circumstances, the extent of law enforcement needs was significant. Moreover, all that Officer Mahady requested was Brownfield's driver's license, proof of insurance, and to check for weapons. Under the totality of the circumstances, Officer Mahady's search of Brownfield was reasonable under Article 1, Section 11 of the Indiana Constitution.

[18] In sum, the trial court did not err when it denied Brownfield's motion to suppress.

[19] The judgment of the trial court is affirmed.

Kirsch, J., and Crone, J., concur.